Scott BANKLER, Phil Ewert, Ruth Lerner, Kay Hayes, Rose Glennon, and Gehard J. Rockicki, Appellants,

v.

Albert VALE and Kathleen Weir Vale, Appellees.

No. 04–01–00248–CV.

Court of Appeals of Texas, San Antonio.

Nov. 21, 2001.

Rehearing Overruled Feb. 27, 2002.

Frank J. Ford, Tom L. Newton, Allen, Stein & Durbin, P.C., San Antonio, for Appellant.

Charles M. Jefferson, Attorney At Law, Rosemary Bamberger Jackson, Barton & Schneider, L.L.P., San Antonio, for Appellee.

Sitting: TOM RICKHOFF, Justice, CATHERINE STONE, Justice and KAREN ANGELINI, Justice.

KAREN ANGELINI, Justice.

Scott Bankler, Phil Ewert, Ruth Lerner, Kay Hayes, Rose Glennon, and Gehard J. Rockicki, the Board of Directors for the Chateau Dijon Townhomes ("the Board"), appeal the trial court's order enjoining them from imposing special assessments to fund improvements to the Townhomes. In five issues, the Board asserts the trial court abused its discretion in granting the order. We affirm.

## Factual & Procedural History

Albert and Kathleen Weir Vale own a condominium unit in the Chateau Dijon Townhomes. After the Board passed a special assessment to build a reserve account and to fund "emergency" improvements to the Townhomes, the Vales brought suit against the Board, seeking a temporary restraining order and injunctive relief. In their petition, the Vales alleged the Board "breached the provisions of the Declaration of Covenants, Conditions and restrictions" of the Association. Specifically, the Vales claimed the Board acted *ultra vires* of its duties by imposing the special assessment, harming the property's value and their ability to sell the property in the future. Two Declarations were introduced at the hearing on the motion, the original Declaration and an amended Declaration. The trial court found that neither Declaration had been complied with and issued a temporary restraining order and a temporary injunction, suspending the special assessments pending trial on the merits. The Board appeals to this court.

STANDARD OF REVIEW

The trial court enjoys broad discretion in granting or denying temporary injunctions. *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978) In exercising its discretion, the only issue before the trial court is whether the status quo should be preserved pending trial on the merits. *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (1961); *Ramsey v. Lewis,* 874 S.W.2d 320, 322 (Tex.App.—El Paso 1994, no writ). On appeal, this court may only review whether the trial court clearly abused its discretion in resolving that issue by granting or denying the temporary injunction. *City of San Antonio v. Rankin,* 905 S.W.2d 427, 430 (Tex.App.—San Antonio 1995, no writ); *Ramsey,* 874 S.W.2d at 323. The trial court abuses its discretion when it misapplies the law to the "established facts or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery." *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Rankin,* 905 S.W.2d at 430. All legitimate inferences from the evidence are drawn in favor of the trial court's judgment, and the trial court does not abuse its discretion where the evidence "tends to sustain the cause of action as alleged." *Munson v. Milton,* 948 S.W.2d 813, 815 (Tex.App.—San Antonio 1997, writ denied).

DISCUSSION

The Board appeals the issuance of the temporary injunction in five issues. It alleges: 1) the order is void *ab initio* because the Vales failed to request a bond in their pleadings and have failed to post a bond; 2) the temporary injunction does not meet the requirements of Texas Rule of Civil Procedure 683; 3) the trial court abused its discretion in granting the injunction because the Board reasonably acted within its authority; 4) the trial court abused its discretion in granting the injunction because the Vales had an adequate remedy at law and proved no irreparable injury; and 5) the order is void and against public policy.

**Is the Order Void *Ab Initio?***

In its first issue, the Board alleges the order granting the injunction is void because the Vales did not request a bond in their pleadings and because they failed to post a bond at the time of this appeal. A temporary injunction order that fails to require an applicant to post a bond is void. *Qwest Communications Corp. v. AT & T Corp.,* 24 S.W.3d 334, 337 (Tex.2000); *Lancaster v. Lancaster,* 155 Tex. 528, 291 S.W.2d 303, 308 (1956); *see* TEX.R. CIV. P. 684. Further, the applicant must execute the bond to the adverse party and file it with the clerk before the trial court issues the temporary injunction. *Lancaster,* 291 S.W.2d at 308; *Chambers v. Rosenberg,* 916 S.W.2d 633, 634 (Tex.App.—Austin 1996, writ denied).

Although the Board argues the order is void because the Vales failed to *plead* a bond requirement, courts have held that to be entitled to injunctive relief, an applicant bears the burden of pleading and proving only three elements: 1) a wrongful act; 2) probable right of relief; and 3) probable injury. *See Swate v. Medina Cmty. Hosp.,* 966 S.W.2d 693, 700 (Tex.App.—San Antonio 1998, pet. denied). No court has extended the applicant's burden to include pleading a bond. Such a holding runs afoul of the purpose behind a bond in the injunction context—to protect the defendant—and would be, simply, illogical.[1]

1. The Board relies on the general rule that a trial court may not grant a party relief not requested in its pleadings and claims that the trial court erred by imposing a bond require-

Further, the Board's reliance on *Boren v. Bank of the West*, 535 S.W.2d 776, 778 (Tex.Civ.App.—Amarillo 1976, no writ) is misplaced. In *Boren*, the court of appeals held the trial court exceeded its authority by, sua sponte, ordering the defendant to post a bond as an alternative to satisfying the temporary injunction requested by the plaintiffs. *Id.* at 777. *Boren*, involving a bond posted to benefit the plaintiff, is inapposite to the Vales' case, which involves a bond posted to benefit the defendant.

Although the Board also argues the injunction is void because the Vales failed to pay the bond as required in the order, the record reflects the Vales posted their bond before the issuance of the writ. *Lancaster*, 291 S.W.2d at 308 (holding plaintiff must execute bond and file it with the clerk before the writ of injunction issues); *Chambers*, 916 S.W.2d at 634. The Vales executed a bond in favor of the defendants on March 22, 2001, and the clerk's record does not contain a writ of injunction. The Board's first issue is overruled.

**Does the Order Meet Rule 683's Requirements?**

■ In its second issue, the Board argues the injunction order is void for failure to satisfy Texas Rule of Civil Procedure 683. A valid order for a temporary injunction must: (1) state the reasons for the injunction's issuance by defining the injury and describing why it is irreparable; (2) define the acts sought to be enjoined "in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him;" and (3) set the cause for trial on the merits and fix the amount of the bond. *See* Tex.R. Civ. P. 683; *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex.1986); *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex.1967). The Texas Supreme Court, in describing the necessity of definiteness in an injunction order, recognized limitations to that requirement.

> [A]n injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (1956) (citations omitted). The Board complains the order is vague because: (1) the order fails to describe with reasonable accuracy the acts to be restrained; (2) the order is vague as to what it prohibits with regard to preparation of a resale certificate; and (3) the order fails to identify when the injunction ends.[2]

ment not pleaded by the Vales. *See Bilderback v. Priestley*, 709 S.W.2d 736, 743 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.). Although Rule 684 requires an applicant to post a bond in every case in which he or she obtains injunctive relief, the bond requirement does not constitute a form of "relief" applicants would seek for themselves. Tex. R.App. P. 684; *Qwest Communications Corp.*, 24 S.W.3d at 337; *Lancaster*, 291 S.W.2d at 308. Rather, the bond requirement serves to protect the defendant. *Franklin Savs. Ass'n v. Reese*, 756 S.W.2d 14, 16 (Tex.App.—Austin 1988, no writ).

2. The Board also argues the order is void because it fails to specify whether it applies to the original or amended Declaration. How-

A. *Does the Order Describe with Reasonable Accuracy the Acts to be Enjoined?*

The Board asserts "the order does not meet the strict requirements of Rule 683 in that it fails to describe with reasonable accuracy the acts to be restrained." Specifically, it challenges subparagraph (C) of the order, which is as follows:

> (C) Doing anything which may persuade any purchaser or prospective purchaser which may interfere with a contract or sale of any condominium unit at Chateau Dijon, EXCEPT that Defendants may, upon receipt of a request pursuant to Texas Property Code § 82.157, prepare a resale certificate which provides truthful information concerning the imposition of special assessments and that the special assessments are in dispute and are the subject of this litigation, said information on Exhibit "A" attached hereto.

The Board attacks the language "prospective purchaser," asserting it is overly broad and may include an unlimited and unidentifiable class of persons. The Board also claims that the phrase "[d]oing anything which may persuade" is equally vague. We disagree.

A "purchaser" is defined in the Uniform Condominium Act as "a person ... who by means of a voluntary transfer acquires a legal or equitable interest in a unit other than a leasehold interest or as security for an obligation." Tex. Prop.Code Ann. § 83.003(a)(20) (Vernon 1995). By definition, a "purchaser" is actually an owner. A "prospective purchaser," in laymen's terms, would be someone "likely to be or become" a purchaser of a Chateau Dijon unit. *See* Webster's New Collegiate Dictionary 918 (1981). Accordingly, a "prospective purchaser" does not include an unidentifiable group of people. Furthermore, by including the term "prospective purchaser," the trial court precluded the Board from circumventing the injunction by simply labeling a person as a "prospective purchaser," someone who has not yet acquired an interest in a condominium unit, rather than a "purchaser."

The Board also argues that the phrase "[d]oing anything which may persuade" is ambiguous. Again, we disagree. The provision containing that phrase, read as a whole, allows the Board to provide any purchaser or prospective purchaser with the information that is required to be disclosed under the Uniform Condominium Act. *See* Tex. Prop.Code Ann. § 82.157 (Vernon 1995). Essentially, any "persuasive" tactics beyond the statutorily mandated disclosures would be in violation of the injunction. Just as our sister courts of appeals and the supreme court have refused to find similar orders void for vagueness, we hold the order here is not overly broad in its scope and sufficiently advises the Board of those acts it is enjoined from engaging in.[3]

B. *Is the Order Vague with Respect to the Preparation of a Resale Certificate?*

ever, as the Vales correctly point out, the trial court found that neither the original nor the amended Declaration had been complied with, and accordingly, the injunction order applies to the Board's actions under either Declaration.

3. *See Ex parte Browne,* 543 S.W.2d 82, 85 (Tex.1976) (upholding an injunction order "which enjoined [the appellant from] 'taking any steps whatsoever to consolidate the captioned cause' into the 58th District Court"); *Republic Western Ins. Co. v. State,* 985 S.W.2d 698, 705–07 (Tex.App.—Austin 1999, review dism'd w.o.j.) (rejecting appellant's complaint that injunction preventing them from engaging in any "unauthorized insurance" conduct was overly broad); *Thompson v. Thompson Air Conditioning & Heating, Inc.,* 884 S.W.2d 555, 559 (Tex.App.—Texarkana 1994, no writ) (finding order prohibiting appellant from using his surname "directly or indirectly in connection with the sales and serving of heating

The Board claims "[t]he order is also vague as to what it prohibits with regard to preparation of a resale certificate." In making this assertion, the Board is again referring to subparagraph (C) of the injunction order. The Board asserts that it is unclear whether "this Order" prohibits the Association from providing any information in the resale certificate except for the contents of Exhibit "A" or whether Exhibit "A" is to be substituted only for portions of the resale certificate relating to assessments.

The Uniform Condominium Act requires that before executing a contract of sale, a unit owner must furnish to the purchaser a resale certificate. TEX. PROP.CODE ANN. § 82.157(a) (Vernon 1995). The resale certificate must contain statements of various rights and obligations the association may have, as well as statements regarding other factors that may affect the value of the condominium. *Id.*

Subparagraph (C) provides in part:

> ... Defendants may, upon receipt of a request pursuant to Texas Property Code § 82.157, prepare a resale certificate which provides truthful information concerning the imposition of special assessments and that the special assessments are in dispute and are the subject of this litigation, said information in Exhibit "A" attached hereto.

Exhibit "A" provides as follows:

> The Board of Directors have levied two special assessments, one in 2000 for $1.00/sq. ft., another in January 2001 for $10.00/sq. ft. The validity of those assessments has been challenged in a civil lawsuit currently pending in Bexar County District Court, under cause No.2001 CI 04045, styled *Albert Vale, et al v. Scott Bankler*, et al. A temporary injunction has been issued suspending the special assessments, pending trial on July 23, 2001.

The language in the order pertaining to Exhibit "A" is clear. The Board may prepare a resale certificate which complies with Texas Property Code, section 82.157, and provides truthful information about the imposition of any special assessments, particularly those that are the subject of "this litigation." The information in Exhibit "A," to be included in the resale certificate, describes "this litigation."

C. *Is the Order Vague Because It Does Not Identify When the Injunction Ends?*

■ Finally, the Board argues the injunction order is vague because it fails to identify when the injunction ends. We first note that the Board offers no support for its assertion. Secondly, the term temporary injunction means an injunction which is effective pending further order of the court. *Conway v. Irick*, 429 S.W.2d 648, 649 (Tex.Civ.App.—Fort Worth 1968, writ ref'd); *see Brines v. McIlhaney*, 596 S.W.2d 519, 522 (Tex.1980). Here, the injunction specifically states that the special assessments should be suspended pending further order from the court. This statement is sufficient to identify when the injunction ends. The Board's second issue is overruled.

**Did the Board Act Reasonably and Within Its Authority in Imposing the Assessments?**

In its third issue, the Board asserts the trial court abused its discretion in granting the temporary injunction because the

and air conditioning units and equipment or related products" was not unlawfully vague); *Breithaupt v. Navarro County*, 675 S.W.2d 335, 339–40 (Tex.App.—Waco 1984, writ ref'd n.r.e.) (upholding injunction ordering appellants to stop "directly or indirectly interfering with the use of [a public] road").

Board acted within the scope of its authority in enacting the assessments. The Vales, however, argue that under either the original or the amended Declaration, the Board was acting *ultra vires* of its authority, and therefore, the trial court correctly granted the injunction.

A. *Standard of Review:*

■ This court reviews a trial court's granting of a temporary injunction for an abuse of discretion. *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978). The Board argues, however, that we should apply a reasonableness standard in reviewing its actions. The Board relies on two cases for its assertion. In *Raymond v. Aquarius Condominium Owners Ass'n, Inc.,* 662 S.W.2d 82 (Tex.App.—Corpus Christi 1983, no writ), the Raymonds challenged the sufficiency of the evidence to support the implied finding that the imposed assessments were lawful. *Id.* at 85. In reviewing their issue and the evidence, the appeals court determined:

> ... that appellants acquired their condominium units subject to the Condominium Declaration which authorizes the appellee and its Board of Directors to assemble and determine the amounts agreed upon as 'common expenses,' we have looked to the record to find there is sufficient evidence to support the implied finding that the appellee, through the Board of Directors acting within the scope of authority granted in the Bylaws, approved the various expenditures accounted for by appellee. The assessments are reasonably related to the expenses classified as 'common expenses' falling under the allowable categories of the Declaration and the Texas Condominium Act.

*Id.*

The Board also relies on *Pooser v. Lovett Square Townhomes Owners' Ass'n,* 702 S.W.2d 226 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). In *Pooser,* condominium unit owners sued the Owner's Association to enjoin it from collecting past-due maintenance assessments. *Id.* at 228. The trial court denied the relief sought. *Id.* On appeal, the owners challenged one of the trial court's conclusions of law, stating that " 'reasonable action is not a substitute for the unambiguous requirements of the statute, by-laws and Declarations of the Condominium Association.' " *Id.* at 231. The court followed *Raymond* and applied the reasonableness standard in evaluating the Association's conduct. *Id.*

We decline to adopt the reasonableness standard as first set forth in *Raymond* and as followed in *Pooser* for purposes of our review here. Whether the Association's actions were reasonable under either Declaration goes to the merits of the case. The *Raymond* and *Pooser* opinions arise from trials on the merits of each case. Here, the cause has not yet been submitted to a trial on the merits; we are simply reviewing whether the trial court abused its discretion in granting the Vales a temporary injunction. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978) (holding the purpose of a temporary injunction is to preserve the status quo pending trial on the merits).

B. *Were the Board's Actions Valid Under the Declarations?*

The Board asserts that its actions were valid under Articles 7, 10 and 16 of the original and amended Declarations. The Vales argue, however, that there is sufficient evidence in the record to support the trial court's finding that the special assessments did not comply with either the 1982 or the 1978 Declarations.

Article 7 in both Declarations is a general provision that describes the Board's authority, but limits its powers by stating "the Board shall have no authority to acquire and pay for out of the Maintenance Fund capital additions and improvements (other than for purposes of replacing portions of the Common Elements, subject to all the provisions of this Declaration) ... except as expressly provided herein." Article 7, however, does not authorize the Board to impose assessments on the unit owners to pay for capital additions and improvements. Article 10, which was amended in the 1982 Declaration, allows the Board to impose assessments on unit owners to cover unforeseen emergency expenses.[4] Article 16, which remained unchanged following the 1982 amendment, allows the Board to levy a special assessment "[i]f the insurance proceeds are insufficient to pay all of the costs of repairing and rebuilding" the Townhomes. There is no evidence here that the Townhomes were damaged by fire or other natural disaster or that insurance proceeds recovered to repair such damage were insufficient.

The Board passed the challenged assessment to build a reserve account and to fund "emergency" improvements to the Townhomes. Because the Board's actions clearly were not authorized under either Articles 7 or 16 of the Declarations, we must determine whether the assessments were authorized under Article 10.

Article 10 of the 1982 Declaration allows the Board to "levy a special, one-time assessment to cover *unforeseen emergency expenses.*"[5] In its letter to the unit owners, the Board stated that "the reserve account is necessary to provide funds for all emergency repairs and future replacement costs of the property." In that same letter, the Board describes the proposed capital improvements as "emergency projects."[6]

The Texas Supreme Court has characterized an emergency as "a condition arising suddenly and unexpectedly ... and which calls for immediate action." *Goolsbee v. Texas & N.O.R. Co.,* 150 Tex. 528, 243 S.W.2d 386, 388 (1951). Similarly, this court has defined the term "emergency" as "an unforeseen combination of circumstances that calls for immediate action; a sudden or unexpected occasion for action." *River Road Neighborhood Ass'n v. South*

4. The Board argues that the 1982 Declaration never went into effect because it was not signed by 75% of the Board/Unit Owners, as required in the 1978 Declaration. However, because the trial court determined that the Board's actions were not authorized under either Declaration, we need not determine which Declaration was in effect at the time the assessments were imposed.

5. Article 10 of the 1978 Declaration also allows the Board to estimate the net charges for maintenance likely to be paid during the upcoming year. Only when the estimated sum is inadequate, may the Board levy a further assessment. Here, the assessment was not imposed to supplement an already-existing and inadequate maintenance fund, but rather to fund "a long-term financial and capital improvement plan."

6. The Board attached a list to its letter to the unit owners describing the repair work that falls within their plan and the estimated costs of each project. Those projects are as follows: Sewer Leak Detection Study; Sewer Replacement (one building); Roof Repair/Replacement (one building); Hydrostatic Domestic Water Lines Pressure Test Study; Stabilization of Piers (two buildings); Repair/Replace All Columns, Exterior Siding, Rotted Wood and repaint all exteriors; Necessary inside Cosmetic Repairs; and Other Exterior Cosmetic Repairs (Brick/Masonry).The list then describes other projects to be implemented over the next ten to twelve years.

*Tex. Sports, Inc.,* 720 S.W.2d 551, 557 (Tex.App.—San Antonio 1986, writ dism'd).

Even though the Board characterized the assessments as a response to "emergency" needs, the evidence supports the notion that the assessments were not imposed to pay for damage caused by an "unforeseen emergency." First, the assessment itself indicates that the proposed projects are non-emergent. The first stage of improvements was set to begin in February of 2001. The next stage runs from April to September of 2001. The third phase runs between October of 2001 and March of 2002. The fourth spans between April and September of 2002, and the final stage runs from October, 2002 to March, 2003. An emergency would require more immediate action than that proposed here. In addition, the plan includes funding for cosmetic repairs. Cosmetic repairs, by their very nature, are not emergencies. And finally, the plans allocates a substantial amount of funds raised through the assessment to a reserve fund. Funding a reserve account cannot be an emergency.

Second, there is conflicting evidence regarding whether the assessments were imposed in response to an emergency. Rose Glennon, a Board member, testified that after she was elected to the Board, a list of repairs was handed out. The cost of those repairs, according to Glennon, was estimated at $1.7 million. She later testified that, at a meeting held in May of 2000, the owners were told that general repairs to the roof, foundation, and plumbing were necessary, but not emergent, and would cost two million dollars or more. Similarly, Lloyd Jary, who owns a Townhome unit, testified that the Townhomes have been in need of repair for over a year and a half. He further testified that the necessary repairs "can't be done too soon." The Vale's witness, James Mathis, a condominium manager and former Chateau Dijon property manager, testified that "in [his] business, an emergency is a tornado comes through and blows a roof off or you have a fire or a flood ... Anything else is something you manage and you plan for and take care of." A plumber also testified on the Vale's behalf, stating that there are no major emergency repairs to the Townhomes that need to be completed within the next six months. Furthermore, in response to the question of whether he considered a sewer leak detection study an emergency, Scott Bankler, President of the Board, testified that "[i]n order to fix the underlying problem I think you have to expend the money for the [leak detection] study." Similarly, Kathleen Hayes, also a Board member, testified that she believes the assessment was imposed in response to an emergency. Hayes does not consider her warped floor that resulted from leaks in the roof or the cracks in her walls from the shifting foundation to be emergencies. Hayes also described the mold growing in some of the units as an emergency.

Although there is some evidence suggesting that the imposition of the assessment was in response to an emergency, the trial court was entitled to weigh the evidence and credit the testimony that the assessments were not necessary for emergency improvements. Accordingly, we cannot say the trial court abused its discretion in determining the Board's action were not authorized by either Declaration. The Board's third issue is overruled.

**Harm, Inadequate Remedy at Law, or Probability of Success at Trial**

In its fourth issue, the Board claims the trial court abused its discretion in granting the temporary injunction because the Vales failed to prove they suffered irrevocable harm, had an inadequate

remedy at law, or had any probability of success at trial. We disagree.

A party requesting injunctive relief must plead it will suffer a probable injury. Probable injury includes imminent harm, irreparable injury, and no adequate remedy at law. *Blackthorne v. Bellush,* 61 S.W.3d 439, 444–45 (Tex.App.—San Antonio, July 5, 2001, no pet. h.). Demonstrable intent to breach a restrictive covenant will support an injunction without any showing of irreparable injury or imminent harm. *E.g., Jim Rutherford Invs., Inc. v. Terramar Beach Comty. Ass'n,* 25 S.W.3d 845, 848 (Tex.App.—Houston [14th Dist.] 2000, pet. denied); *Munson,* 948 S.W.2d at 815; *Guajardo v. Neece,* 758 S.W.2d 696, 698 (Tex.App.—Fort Worth 1988, no writ). Here, the Vales are seeking to enforce the Declaration of Covenants Conditions and Restrictions for Chateau Dijon Townhomes. Accordingly, they were not required to show proof of irreparable injury or imminent harm to be entitled to injunctive relief. *Jim Rutherford Invs., Inc.,* 25 S.W.3d at 848; *Munson,* 948 S.W.2d at 815; *Guajardo,* 758 S.W.2d at 698. This court, however, must still determine whether the Vales have an adequate remedy at law.

A court will not issue a temporary injunction when there is a plain and adequate remedy at law. *McGlothlin v. Kliebert,* 672 S.W.2d 231, 232 (Tex.1984). A legal remedy is adequate when it gives the plaintiff complete, final, and equitable relief. *Recon Exploration, Inc. v. Hodges,* 798 S.W.2d 848, 851 (Tex.App.—Dallas 1990, no writ). If a defendant is unable to pay damages, no adequate remedy at law exists. *Recon Exploration, Inc.,* 798 S.W.2d at 851; *Bank of the Southwest N.A., Brownsville v. Harlingen Nat'l Bank,* 662 S.W.2d 113, 116 (Tex.App.—Corpus Christi 1983, no writ).

The Board asserts that the Vales have an adequate remedy at law—a suit for damages. It relies on Albert Vale's statement that he was able to pay the assessment in making this assertion. The Vales, however, point out that the Association may only raise revenue by imposing assessments on the Townhome unit owners. According to the Vales, "[i]f the temporary injunction in this case is lifted and the [Board] proceed[s] to spend the $2,147,000.00 the special assessment will raise, there is no way that this amount can be raised to be repaid from any source other than the townhome owners." We agree. If the injunction were dissolved, allowing the Board to raise and spend the assessment, the Board would be unable to pay any judgment the Vales may be awarded against it. We cannot find the trial court abused its discretion in finding the Vales lacked an adequate remedy at law.

**Is the Temporary Injunction Order Illegal or Unconstitutional?**

In its final two issues, the Board alleges the injunction order restricts its ability to comply with the Texas Property Code and prevents it from disclosing truthful information to prospective purchasers in violation of the United States and Texas Constitutions. We disagree.

The Uniform Condominium Act places certain duties on a unit owner who intends to sell his or her unit. Tex. Prop.Code Ann. § 82.157 (Vernon 1995). Specifically, section 82.157 requires the unit owner, before executing a contract or conveying the unit, to furnish the purchaser with a copy of the current declaration, bylaws, any association rules, and a resale certificate. *Id.* The resale certificate must contain the association's current operating budget as well as other information affecting the association's finances, including information about unsatisfied judgments against the

association and information about the nature of any pending suits against the association. *Id.* § 82.157(a)(6), (7).

The Board argues that if it complies with the injunction order and refuses to disclose any of this information to a prospective purchaser, it may subject itself to liability for failing to fully disclose material facts about the condominiums. The injunction order, however, expressly permits the Board "upon receipt of a request pursuant to Texas Property Code § 82.157, [to] prepare a resale certificate which provides truthful information concerning the imposition of special assessments and that the special assessments are in dispute and are the subject of this litigation. . . ." The order expressly requires the Board to comply with section 82.157 and is not illegal.

The Board also claims that the injunction order is unconstitutional because it is overly broad and prohibits the "Board from stating truthful, non-misleading information to prospective purchasers." The Board further charges that "the Order essentially prohibits the Board from saying anything to anyone concerning the property since the listener *may* be a prospective purchaser and *may* tend to be persuaded."

However, as previously stated, the provision preventing the Board from "[d]oing anything which may persuade any purchaser or prospective purchaser which may interfere with a contract or sale of any condominium unit" allows the Board to provide any purchaser or prospective purchaser with the information that is required to be disclosed under the Uniform Condominium Act. *See* TEX. PROP.CODE ANN. § 82.157 (Vernon 1995). We overrule the Board's final issues.

### CONCLUSION

We hold the trial court did not abuse its discretion in granting the Vales' request for injunctive relief. Accordingly, the trial court's judgment is affirmed.