**Murray MARCUS and Barbara Marcus, Appellants,**

v.

**WHISPERING SPRINGS HOME-OWNERS ASSOCIATION, INC., Appellee.**

No. 05–04–00097–CV.

Court of Appeals of Texas, Dallas.

Jan. 20, 2005.

Anthony A. Petrocchi, Teresa M. Robbins, Christopher M. Weil, Weil & Petrocchi, P.C., Dallas, for Appellants.

Carl David Adams, Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice MORRIS.

In this appeal from a temporary injunction, Murray and Barbara Marcus contend the trial court erred in enjoining them from constructing a home on their property pending the outcome of this suit on the merits. The Whispering Springs Homeowners Association, Inc. responds that the Marcuses had no approval from the neighborhood's architectural review committee to build their proposed home and, therefore, any construction of the house would be in violation of the property's restrictive covenants. After reviewing the evidence,

we conclude the trial court did not abuse its discretion in issuing the temporary injunction. We affirm the trial court's order.

## I.

Murray and Barbara Marcus are the owners of an unimproved lot in a neighborhood development known as Whispering Springs. All the lots in the Whispering Springs development were originally owned by the Dale Poe Development Corporation. As developer, Poe executed a "Declaration of Covenants and Restrictions and Homeowners' Agreement on and for Whispering Springs." The declaration created both a homeowners association, consisting of all owners of lots in the development, and an Architectural Review Committee ("ARC"), consisting of three members appointed by Poe. Poe retained the right to appoint and remove a majority of the members of the ARC until all the lots in the development had been sold and a single family building on each lot had been approved by the ARC.

The purpose of the ARC is to "review and approve, conditionally approve, or disapprove all plans submitted to it for any proposed improvement, alteration or addition solely on the basis of aesthetic considerations and the overall benefit or detriment which would result to the immediate vicinity and the Property generally." In making its decisions the ARC is to consider "the aesthetic aspects of the architectural designs, placement of buildings, landscaping, color schemes, exterior finishes and materials and similar features." The ARC's decision must be given to the applicant within sixty days after the committee receives "all the materials required by the ARC." If written disapproval or a request for additional information is not sent to the applicant within sixty days, the plans are deemed approved.

In addition to the ARC approval process, the declaration of covenants and restrictions also sets forth specific requirements for any improvement to be built on a neighborhood lot. These requirements include minimum square footage, minimum setbacks, permissible materials for the construction of roofs, chimneys, and mailboxes, and limitations on garage entries, fences, hedges, and walls.[1] Finally, the declaration requires that an owner of a lot begin construction of a dwelling no later than six months after the date on which the deed conveying the lot to the owner is recorded.

The Marcuses purchased their lot in Whispering Springs in December 1998. The Marcuses admit they were aware of the covenants and restrictions placed on the property at the time they purchased the lot. The Marcuses contend they submitted proposed house plans for approval to a member of the ARC in July 1999. According to Barbara Marcus, she received a phone call from a man who identified himself as a member of the Association telling her, in essence, that their plans were unacceptable.

In June 2002, the Marcuses submitted a new set of plans to the ARC for its approval. The Association claims the ARC asked the Marcuses for additional information to make the plans "more complete." After the plans were supplemented, the Marcuses and the members of the ARC met to discuss them. The ARC informed the

---

1. Most of these specifications were amended in the First Amendment to Declaration of Covenants Restrictions and Homeowners Agreement on and for Whispering Springs filed April 4, 1990. Although the Marcuses state in their brief they have "denied the genuineness of the assignment of the First Amendment," there was no argument before the trial court and no argument on appeal supporting this contention.

Marcuses there were several aspects of the plans it found unacceptable including the fact that the design of the home included garage doors facing the street in violation of the requirements for garages set forth in the declaration.[2] By letter dated August 22, 2002, the Association informed the Marcuses their plans had been denied approval.

In October 2002, the Marcuses submitted another set of plans to the ARC. The Association contends the October plans contained many of the elements the ARC had already rejected in the earlier plans including garage doors facing the street. Although the Association and the Marcuses communicated with each other after the October plans were submitted, the ARC did not formally reject the new plans until February 2003. Because the ARC did not send a written denial within sixty days after the plans were submitted, the Marcuses contend the plans were deemed approved.

Based on their contention that the plans were deemed approved, the Marcuses began preparations to build their home. As part of these preparations, they submitted plans to the City of Dallas and obtained a permit for construction. The Association became aware of the Marcuses intent to begin construction when their lot was surrounded by a construction fence and a building permit was posted. In response to the imminent construction, the Association filed this suit and request for a temporary restraining order.

At the hearing on the temporary restraining order, the Association urged the court to issue an order preventing construction of any improvements on the Marcuses lot because the plans upon which the

Marcuses received their permit to build were never approved by the ARC. Indeed, according to the Association, the plans submitted to the city and upon which the permit was issued were different than any of the plans the Marcuses submitted to the ARC. Finally, the Association argued the Marcuses were in violation of the covenants and restrictions on their property because they failed to begin construction of an approved structure within six months of purchasing the property. The Marcuses responded that they fulfilled all the requirements for submitting plans to the ARC and the ARC failed to respond within the allowable time thus rendering their plans approved.

After hearing the evidence, the trial court granted the temporary injunction and ordered that the Marcuses refrain from constructing any improvements on their property without obtaining advance approval from the ARC. The trial court further held, however, that the Association's request for an injunction on the basis that the Marcuses did not begin construction within six months of buying the property was denied. The Marcuses brought this interlocutory appeal challenging the propriety of the restraining order.

## II.

■ The only issue before the trial court on a request for a temporary injunction is whether the applicant is entitled to preserve the status quo of the subject matter of the suit pending a trial on the merits. *Gettysburg Homeowners Ass'n, Inc. v. Olson,* 768 S.W.2d 369, 371 (Tex. App.-Houston [14th Dist.] 1989, no writ). The trial court has broad discretion in deciding this issue. *See Bankler v. Vale,*

---

**2.** The declaration specifies "[t]here shall be a minimum thirty (30) foot setback from the street for side entry garages. There shall be no front entry garages on any Lot. If entry is

from a street other than the street fronting the dwelling unit, then the garage entry must be screened from view of the entry street."

75 S.W.3d 29, 32 (Tex.App.-San Antonio 2001, no pet.). On appeal, we review only whether the trial court clearly abused its discretion in granting or denying the temporary injunction. *Id.*

In general, temporary injunctive relief is warranted when a movant shows: (1) a probable right of recovery; (2) imminent, irreparable harm will occur if the request is denied; and (3) no adequate remedy at law exists. *See Munson v. Milton*, 948 S.W.2d 813, 815 (Tex.App.-San Antonio 1997, pet. denied). When an injunction is sought to enforce a restrictive covenant, however, the movant is not required to show proof of irreparable injury. *Id.* Instead, the movant need show only that the defendant intends to do an act that would breach the covenant. *Id.*

In several of the issues presented on appeal, the Marcuses argue the trial court erred in granting the injunction because the ARC wrongfully refused to approve the home design plans they submitted to it. The Marcuses contend the ARC's refusals to approve their proposed plans were improper because they were arbitrary and capricious as well as untimely under the declaration of covenants and restrictions. The Marcuses further contend the ARC had no power to deny the proposed plans because the members were not properly empaneled under the declaration. Finally, the Marcuses argue the Association is not entitled to the equitable remedy of an injunction because the manner in which it handled the approval process was unauthorized and malicious giving the association "unclean hands." These arguments all support the contention that the trial court erred in granting the injunction because the Marcuses have a legal right to build a house based on plans submitted to, and wrongfully refused by, the ARC. The Association contends, and the trial court found, however, that the plans upon which the Marcuses received a building permit were never submitted to the ARC. Therefore, according to the Association, the house upon which construction was beginning was never wrongfully rejected by the ARC or deemed approved.

In response to the Association's argument, the Marcuses contend that the plans upon which they received the building permit were essentially identical to the last set of plans submitted to the ARC. The Marcuses point to the testimony of Barbara Marcus in which she stated that the plans approved by the city were the same in all material ways as the plans submitted to the ARC. This testimony was contradicted, however, by the testimony of Gary Pickens, a member of the ARC. In response to a direct question by the trial court, Pickens stated the plans approved by the city for construction were different from the plans submitted to the ARC. The trial court does not abuse its discretion when it bases its decision on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978). Because there is evidence to support the trial court's finding that the Marcuses were attempting to build a home based on plans never submitted to the ARC for approval, the Marcuses' arguments for dissolving the temporary injunction based on the alleged improper actions of the ARC during the plan approval process cannot form the basis for overturning the trial court's temporary injunction.

The Marcuses also argue in several of their issues that the restrictive covenants relied upon by the Association are unenforceable because they are vague, ambiguous, and unreasonably restrict the use and enjoyment of the land. The Marcuses contend the ARC's ability to disapprove proposed home plans "solely on the basis of aesthetic considerations" is overly broad and grants the ARC the power to

arbitrarily deny them the right to build a home on their property. Restrictive covenants are interpreted according to the rules that govern contract construction. *Air Park—Dallas Zoning Comm. v. Crow Billingsley Airpark, Ltd.,* 109 S.W.3d 900, 909 (Tex.App.-Dallas 2003, no pet.). Covenants are unambiguous as a matter of law if they can be given a definite or certain legal meaning. *Id.* Approval covenants are valid to the extent they furnish adequate notice to the property owner of the specific restriction sought to be enforced. *See Whiteco Metrocom, Inc. v. Indus. Props. Corp.,* 711 S.W.2d 81, 82 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

Although the language in the approval covenant contained in the declaration of covenants and restrictions is broad, the declaration also contains specific limitations on the design of homes permitted in the neighborhood. In its rejection of the plans submitted by the Marcuses, the ARC referenced the proposed plans' violation of the restriction on garage entries. The declaration prohibits front entry garages and requires that any side entry garage be set back a minimum of thirty feet from the street and be screened from view. This restriction is clear and unambiguous. There was evidence presented at the hearing that the design plans submitted by the Marcuses to the ARC, as well as the plans approved by the city for construction, included plans for a garage entry that would violate the restrictions applicable to the property. We conclude the trial court did not err in granting a temporary injunction based on evidence that the Marcuses intended to build a home with a feature violative of a clear and unambiguous restriction on their property.

We note that in its petition and application for a temporary injunction, the Association relied not only on the Marcuses' alleged intent to build a home in violation of restrictions applicable to building design and approval, but also on the declaration's requirement that property owners begin construction on their lot within six months after purchasing the property. The Marcuses contend this requirement is an unreasonable restriction on the use and enjoyment of their property because there is no provision to extend this deadline when the ARC refuses to approve design plans within the six month period. It is unnecessary for us to address the validity of this restriction, however, because the trial court specifically denied the Association's request for a temporary injunction on this basis.

■ In their second issue, the Marcuses challenge the Association's standing to bring this suit "because the Architectural Review Committee was not constituted in accordance with the declarative instruments." Although the issue of whether the ARC was properly empaneled may effect the committee's power to approve or disapprove proposed home design plans, it does not effect the Association's standing to enforce the provisions of the declaration relating to the design of homes to be built in the neighborhood. The Texas Property Code states that "[a] property owner's association or other representative designated by an owner of real property may initiate, defend, or intervene in litigation or an administrative proceeding affecting the enforcement of a restrictive covenant or the protection, preservation, or operation of the property covered by the dedicatory instrument." TEX. PROP.CODE ANN. § 202.004 (Vernon 1995). Similarly, the declaration of covenants and restrictions for Whispering Springs states that "[b]reach of any of the provisions contained in the Declaration and the continuation of any such breach may be enjoined, abated, or remedied by appropriate legal proceedings instituted by any Owner, ...,

by the Association or the successors-in-interest of the Association." Because the Association was granted the authority to enforce the covenants and restrictions applicable to the Marcuses property both by statute and by the declaration, we conclude the Association had standing to bring this suit. *See Anderson v. New Property Owners' Ass'n of Newport, Inc.,* 122 S.W.3d 378, 385–88 (Tex.App.-Texarkana 2003, pet. denied).

In the Marcuses' final issue they contend "the trial court erred by granting the Association's application for injunction because the trial court ignored the undisputed facts, basing its findings of fact on no or insufficient evidence, thus divesting the Marcuses' property rights without a trial and granting all relief sought in [sic] principal litigation." Many of the Marcuses' arguments under this issue have been addressed above. To the extent the Marcuses are contending there is no evidence or insufficient evidence to support some of the trial court's findings not addressed above, the Marcuses do not provide argument, authority, or record references to support this contention.[3]

Finally, the Marcuses appear to suggest the relief granted by the trial court was improper because it granted the Association all the relief sought in the litigation without a full trial on the merits. The temporary injunction clearly states, however, that the Marcuses are enjoined only until a final hearing on the cause. The injunction does not prohibit the Marcuses from building on their lot but prohibits them from constructing any improvements without advance approval from the ARC until the claims brought by the ARC are resolved. The scope of the injunction is appropriate to preserve the status quo

until the merits of the case are finally decided. We resolve the Marcuses' last issue against them.

We affirm the trial court's order.

---

**3.** In addition, assertions of insufficient evidence are improper in an appeal from an order granting or denying a temporary injunction. *See Matuszak v. Houston Oilers, Inc.* 515 S.W.2d 725, 728 (Tex.Civ.App.-Houston [14th Dist.] 1974, no writ).