# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00310-CV

**Gregory Daniels, Appellant**

**v.**

**Balcones Woods Club, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. GN200811, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this case, the district court granted a permanent injunction in favor of neighborhood association Balcones Woods Club, Inc., requiring appellant Gregory Daniels to remove a car parked on his front lawn in violation of neighborhood association restrictive covenants. Daniels argues that the district court was not fair and impartial, and challenges, among other things, findings of fact and conclusions of law supporting the issuance of the injunction. We will affirm.

## BACKGROUND

Balcones Woods Club, Inc. is a neighborhood association in northwest Austin. It is governed by a board of directors who set neighborhood policy, ensure that the budget is spent properly, and enforce covenants, deed restrictions, and dues collections. Property in the Balcones

Woods neighborhood is subject to certain covenants, conditions, and restrictions that were filed and recorded with the Travis County clerk in January 1974.

Two restrictions are at issue in this case. Section eleven of article five, entitled "Nuisances," states that "No noxious or offensive activity shall be carried on upon any Lot, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood. No vehicle or motor repair work other than minor emergency repair shall be conducted on any lot or in the street or streets adjoining any lot. . . . [N]o disabled vehicle shall be stored or parked in the open on any lot or on any street adjoining any lot." Section twelve, entitled "Unsightly Objects," provides, in part, that "No boat, motor boat, camper, truck, trailer, motor home, recreational vehicle, travel trailer or unsightly vehicles or objects shall be parked or stored between the curb and building line of any lot or on any street adjoining any lot."[1]

Daniels is the owner of a home on Flagstaff Street in the Balcones Woods neighborhood.[2] In the summer of 2001, Daniels began parking a late model Mazda 626 on his front lawn, next to the driveway and under an oak tree.[3] In the late summer of 2001, Brooks Colson, the chairperson of the covenants enforcement committee, informed the Board that the car was parked

---

[1] As the district court explained, "there is no curb at the driveway. That is a flat piece of concrete . . . the curb abuts either side of the driveway. So if [the vehicle is] between the curb and the building line—i.e., on the lawn adjacent to the driveway—that would be a violation. In the driveway is not between the curb and the building line, as I interpret the plain language of this section."

[2] It is undisputed that the restrictions apply to Daniels's property.

[3] Daniels testified that he has been parking different vehicles in the same area since 1991.

on Daniels's front lawn. In a letter dated October 5, the Balcones Woods Operating Committee notified Daniels that it believed that parking a vehicle in his yard was a violation of the neighborhood covenants, conditions and restrictions.[4] The letter also stated that if Daniels disagreed with the allegation, he could contact the committee and explain his position. The committee requested compliance within ten days, but gave Daniels the option of requesting an extension. It notified him that if the violation was not corrected, the matter would be turned over to legal counsel for action.

On January 31, 2002, the Board sent Daniels another letter notifying him that it was prepared to file suit for the "ongoing violation of Article V, Sections 11 and 12 of the restrictive covenants governing [Daniels's] property" regarding a vehicle parked in the front yard, and that he may be required to pay attorney's fees and costs if he did not comply with the covenants. The letter also stated that Daniels could request a hearing before the Board within thirty days in an effort to resolve the matter. Daniels never responded to the Board's letters, sought a hearing, or otherwise attempted to resolve the dispute.

On March 8, 2002, Balcones Woods filed suit, alleging that Daniels was in violation of sections eleven and twelve of the restrictive covenants and seeking a temporary and permanent injunction in addition to attorney's fees and costs. After a bench trial, the district court granted a permanent injunction and assessed attorney's fees and costs against Daniels. Daniels requested findings of fact and conclusions of law, which were timely filed. This appeal followed.

---

[4] Daniels signed a return receipt, acknowledging delivery of the letter, on November 6, 2001.

## DISCUSSION

Daniels complains that the district court was not fair and impartial, as allegedly evidenced by the manner in which it ruled, interjected objections, and prevented cross-examination of witnesses. He also challenges several findings of fact and conclusions of law and attacks the issuance of the injunction.

**Standard of review**

Generally, the necessary elements of an injunction are: (1) a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 295-96 (Tex. App.—Austin 2004, no pet.); *see Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 853 (Tex. App.—Austin 2002, no pet.). However, when an injunction is sought to enforce a restrictive covenant, the movant is not required to show proof of irreparable injury. *Marcus v. Whispering Springs Homeowners Ass'n*, 153 S.W.3d 702, 707 (Tex. App.—Dallas 2005, no pet.); *see Bankler v. Vale*, 75 S.W.3d 29, 39 (Tex. App.—San Antonio 2001, no pet.); *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Instead, the movant need show only that the defendant intends to do an act that would breach the covenant. *Marcus*, 153 S.W.3d at 707; *Vale*, 75 S.W.3d at 39; *Terramar Beach Cmty. Ass'n*, 25 S.W.3d at 849.

We review a district court's issuance of injunctive relief for an abuse of discretion. *Operation Rescue-Nat'l v. Planned Parenthood of Houston & S.E. Tex., Inc.*, 975 S.W.2d 546, 560

4

(Tex. 1998). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the district court's action but "whether the court acted without reference to any guiding rules and principles." *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)).

**Whether the district court was fair and impartial**

Daniels cites several examples of what he contends is evidence that the district court was not fair and impartial because the court "made it obvious" that it favored Balcones Woods and "effectively eliminated any possibility of discovering the complete truth behind this matter."[5]

Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion, and judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Furthermore, "'not establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger. . . . A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.'" *Id.* (quoting *Liteky*, 510 U.S. at 555-56). In short, a district court has the inherent power to control the disposition of cases "with economy of time and effort for

_____

[5] Although Daniels represented himself at trial, *pro se* litigants are generally held to the same standards applied to licensed attorneys. *Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005).

itself, for counsel, and for litigants." *Id*. (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). Moreover, the district court has great discretion over the conduct of a trial. *Id*. (citing *Schroeder v. Brandon*, 172 S.W.2d 488, 491 (Tex. 1943); *see Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied). It may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time. *Francis*, 46 S.W.3d 237, 241; *see* Tex. R. Evid. 611(a) (court shall exercise reasonable control over mode and order of interrogating witnesses and presenting evidence so as to (1) make interrogation and presentation effective for ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment).

We have reviewed the transcript of the circumstances surrounding Daniels's complaints. First, he complains that the court would not allow him to question a witness regarding what the witness believed was "unsightly"—using Daniels's necktie as an example—in an apparent attempt to prove that the meaning of the term is subjective. However, the court accurately informed Daniels that the interpretation of a term in the restrictive covenant is a question of law which is not an appropriate subject for a fact witness. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001) (determining what contract says is generally question of law for court); *see also Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998) (restrictive covenants are subject to general rules of contract construction).

Next, Daniels argues that the "same problem occurred" when he "tried to focus on the issue of waiver or speculative real estate values or to simply test an expert witness's knowledge of critical provisions." In these examples, the district court was avoiding needless consumption of

6

time, *see* Tex. R. Evid. 611(a), because Daniels was asking questions about what the witness did *not* consider to be a violation of the covenants, whether the witness had protested the value assigned to his own property for property tax purposes, and whether individuals may enforce deed restrictions. These lines of questioning were either irrelevant to the legal question of whether Daniels had violated the applicable deed restrictions or improperly called for a legal conclusion.[6] *See* Tex. R. Evid. 402, 701. It is true that the district court played a somewhat active role in the questioning of witnesses. However, this was a bench trial where the court was acting in its dual capacity as both finder of fact and magistrate. *See Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 306 (Tex. 1988). We hold that the district court properly acted within its discretion to maintain control in the courtroom, to expedite the trial, and to prevent what it considered to be a waste of time. *See Francis*, 46 S.W.3d 237, 241; *see also* Tex. R. Evid. 611(a). We overrule Daniels's first issue.

**Findings of fact**

Next, Daniels challenges three findings of fact, asserting that they are erroneous and not supported by evidence.

A district court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)

---

[6] Daniels also contends that the district court prevented cross-examination by "running interference." Specifically, he complains that the court responded to a question asked by the witness. However, the transcript reveals that Daniels asked the witness if Daniels had already asked questions regarding a specific area, and the court responded, reminding Daniels of the witness's testimony.

(citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). In reviewing a factual sufficiency point, we weigh all of the evidence in the record. *See Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 631 (Tex. 2004); *Jones*, 917 S.W.2d at 772. Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Jones*, 917 S.W.2d at 772 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

Finding of fact number nine states that "Daniels allowed grass to grow up around and under the Mazda 626." Douglas Huyck, Daniels's next-door neighbor of twelve years, testified at the permanent injunction hearing that the car was parked on Daniels's front lawn from mid-September 2001 until the end of May 2002.[7] During that time, he never saw any indication that the car had ever been moved. Huyck stated that a picture of the car, introduced into evidence, accurately depicted the fact that grass was "almost touching the undercarriage of the car" and that the rest of the lawn did not appear to be mowed. However, he noted that he had seen Daniels mowing the lawn and observed him mowing around the car. Daniels testified that he moved the car at different times and argues that there is no evidence "suggesting any extensive amount of grass was allowed to grow around the vehicle." He also urges that other testimony indicated the grass was actually mowed and that it is not necessary to mow under the car each time the grass is mowed. However, he does not challenge the eighth finding of fact, that he parked the Mazda 626 on his lawn for months without moving it. There was sufficient evidence that Daniels allowed grass to grow up around and under

---

[7] Daniels apparently removed the car in compliance with the temporary injunction.

the Mazda 626. The ninth finding of fact was not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Jones*, 917 S.W.2d at 772.

Daniels also challenges findings of fact twelve and thirteen. Finding twelve states that "[t]he parking of the car on the front lawn was considered to be unsightly by some of the Balcones Woods residents," and thirteen states that "[t]he Board is of the opinion that the parking of a car on the lawn is a violation of the restrictive covenants, specifically Article V, Sections 11 and 12."

Huyck testified that he was "distressed, anxious, [and] annoyed about [the car] being there." Furthermore, John Schexnayder, Balcones Woods treasurer and member of the Board, testified at the permanent injunction hearing. In response to a question about why the Board is concerned about cars parked on lawns, Schexnayder explained that "the Board strongly feels that it's unsightly, that it is a nuisance, that it is detrimental to the appearance of the neighborhood, to property values in the neighborhood. And the Board has been told by residents in the area that it is offensive and unsightly to them as well." He also testified that the Board's "complaint was that Mr. Daniels was parking an automobile in the front yard of his residence on the grass, in violation of the covenants," and that "the Board unanimously felt . . . that he violated both Section 11 and Section 12 of Article 5, that it was both a nuisance and it was an unsightly vehicle." The testimony of Huyck and Schexnayder provided sufficient evidence to support findings of fact twelve and thirteen. We hold that the three challenged findings of fact are not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Jones*, 917 S.W.2d at 772 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). We overrule Daniels's second issue.

9

**Conclusions of law**

Daniels also challenges four conclusions of law. We review a district court's conclusions of law as a legal question. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). An appellant may not challenge a district court's conclusions of law for factual insufficiency; however, we may review the district court's legal conclusions drawn from the facts to determine their correctness. *Id*.

### *Statute of limitations*

Conclusion of law number four states that "The Association Board filed this lawsuit within the limitations period." Daniels pleaded the affirmative defense of statute of limitations, and carries the burden of conclusively establishing the applicability of the statute of limitations, including the date on which the limitations commenced. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2003). Actions to enforce restrictive covenants are controlled by a four-year statute of limitations. *Air Park-Dallas Zoning Comm. v. Crow-Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 911 (Tex. App.—Dallas 2003, no pet.). When a restrictive covenant is initially violated, but that violation ceases, limitations does not bar future enforcement of the covenant. *See Schoenhals v. Close*, 451 S.W.2d 597, 599-600 (Tex. Civ. App.—Amarillo 1970, no writ).

Daniels argues that limitations commenced in 1991 when he began parking a vehicle on his front lawn. Huyck agreed that Daniels had been parking cars in that location since 1991 or 1992.[8] Although Huyck recalled that certain specific vehicles were parked on Daniels's front lawn,

---

[8] Huyck did not file a complaint with the neighborhood association until September 2000.

10

he could not recall when or how long they were parked on Daniels's front lawn. Daniels admits that he did not begin parking the car at issue, a Mazda 626, on his front lawn until 2001. Balcones Woods filed suit on March 8, 2002, less than a year after Daniels began parking the Mazda 626 on his front lawn. Based on the evidence introduced at trial, Daniels failed to meet his burden of proof to show that limitations commenced more than four years prior to the time the Board filed this lawsuit.[9]

### Whether the Board properly exercised its authority

Daniels challenges three conclusions of law regarding the Board's exercise of authority and the accuracy of its conclusion that Daniels was in violation of the restrictive covenants.

Restrictive covenants are subject to the general rules of contract construction. *Emmons*, 966 S.W.2d at 478. We liberally construe them in order to give effect to their purpose and intent. Tex. Prop. Code Ann. § 202.003 (West 1995). An exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory. *Id*. § 202.004 (West 1995).

---

[9] Daniels also argues that the Board had notice that cars were parked in the same location since 1991 because Huyck or Schexnayder were agents of the Board for that purpose. However, even if notice to Huyck or Schexnayder constituted notice to the Board, the record does not contain sufficient evidence of a continuous violation which may have implicated the statute of limitations.

11

Conclusion of law number seven states that "The Board, in determining that Daniel's [sic] parking a car on the lawn constituted a violation of Article V, Sections 11 and 12 of the restrictive covenants, exercised its discretionary authority in a reasonable manner." The eighth conclusion of law states that "The Board's exercise of its discretionary authority was not arbitrary, capricious or discriminatory."

Huyck testified that the fact that Daniels parked a car on Daniels's lawn annoyed Huyck and was a nuisance. Schexnayder testified that the Board "strongly feels that it's unsightly, that it is a nuisance, that it is detrimental to the appearance of the neighborhood, to property values in the neighborhood," and that neighborhood residents had complained to the Board. Approximately one month after Huyck complained about the location of the car to the Board, the Balcones Woods Operating Committee notified Daniels that it believed that parking a vehicle in his yard was a violation of the neighborhood covenants, conditions and restrictions. On January 31, 2002, the Board of Directors sent Daniels another letter notifying him that it was prepared to file suit for the "ongoing violation of Article V, Sections 11 and 12 of the restrictive covenants governing [Daniels's] property" regarding a vehicle parked in the front yard, and that he may be subject to paying reasonable attorney's fees and costs if he did not comply with the covenants. Daniels never responded to the notices, and approximately one month later, on March 8, Balcones Woods filed suit. There is no evidence that Balcones Woods was notified of the violations yet delayed action. We hold that the exercise of Balcones Woods's discretionary authority was reasonable and was not arbitrary, capricious, or discriminatory. *See id.*

Next, we review *de novo* the district court's finding that Daniels violated the deed restrictions, supported by conclusion of law number twelve. *Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied); *Crow-Billingsley Airpark, Ltd.*, 109 S.W.3d at 909. Section twelve of the restrictive covenant provides, in part, that "No boat, motor boat, camper, truck, trailer, motor home, recreational vehicle, travel trailer or unsightly vehicles or objects shall be parked or stored between the curb and building line of any lot or on any street adjoining any lot." Daniels admits to parking his car on the front lawn, which is between the curb and the building line of his lot. Furthermore, there is a photograph in evidence which depicts the Mazda parked on his front lawn. We overrule Daniels's third issue.

**Waiver**

Next, Daniels contends that Balcones Woods's tolerance of similar violations constituted waiver as a matter of law.

In order to carry the burden of demonstrating a waiver of restrictive covenants, a party must prove that "the violations then existing were so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned." *Anderson Mill Mun. Util. Dist. v. Robbins*, No. 03-04-00369-CV, 2005 Tex. App. LEXIS 7482, at *29-30 (Tex. App.—Austin 2005, pet. abated) (quoting *Cox v. Melson-Fulsom*, 956 S.W.2d 791, 794 (Tex. App.—Austin 1997, no pet.)). The number, nature and severity of the existing violations, any prior acts of enforcement, and whether it is still possible to realize to a substantial degree the benefits sought to be obtained through the covenants are factors to be considered in determining waiver. *Melson-Fulsom*, 956 S.W.2d at 794.

13

Huyck testified that he was aware of other violations in the neighborhood, but explained that he did not "feel that there were any other violations that [he was] aware of as a homeowner on Flagstaff Drive in relation to the sections in question." Schexnayder testified that in the five years preceding the lawsuit, he had not seen other vehicles parked on other individuals' front lawns in the neighborhood. Although Daniels testified that other people park cars on their front lawns, Daniels did not produce any evidence to support his allegation, including any evidence regarding the number, nature and severity of the existing violations, any prior acts of enforcement, or specific other violations that were so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned. *See id.* We overrule Daniels's fourth issue.

**Notice of violation**

Daniels asserts that he did not receive proper notice of a violation because he claims that the car parked on his lawn was not "unsightly"; thus, section twelve does not prohibit parking his car on the lawn. He argues that the car runs, the bumper is smooth and uniform in color, and there are no significant defects on the vehicle. Furthermore, he asserts, "to imply that [he] had a duty to perceive annoyance without explicit communication to that effect is preposterous."[10]

Daniels was explicitly notified twice of the Board's interpretation of the restrictive covenants. The first letter, dated October 5, was addressed to "Mr. Daniels at 4401 Flagstaff Dr." and explained the complaint as "specifically—vehicle parked in yard." It notified him that he could

---

[10] Daniels adds that the "impersonal tone and threatening nature of the notices with envelopes addressed to 'Daniels or Occupant' certainly did nothing to alleviate . . . implications [that Daniels's] vehicle was 'unsightly.'"

contest the violation, which he apparently chose not to do. The second letter, dated January 31, 2002, stated that the Board was preparing to file suit for "the following ongoing violations of Article V, Sections 11 and 12 of the restrictive covenants governing your property at 4401 Flagstaff Drive: Vehicle parked in front yard." It gave Daniels another chance to contest the Board's determination by requesting a hearing, which Daniels also apparently chose not to pursue. We determine that Daniels had notice that the Board considered his vehicle "unsightly" and that it believed that parking the vehicle on the front lawn violated the applicable restrictive covenants. We hold that Daniels had proper notice of the Board's claims. We overrule Daniels's fifth issue.

**Adequate remedy at law**

Daniels argues that an injunction should not have been issued because Balcones Woods had an adequate remedy at law by pursuing enforcement of Austin city ordinance number 020829-58 which, he argues, also prohibits parking vehicles on front lawns. The district court took judicial notice of the ordinance. Assuming that Balcones Woods was required to prove the lack of an adequate remedy, its burden was met in this case. Balcones Woods would have to rely on the City of Austin to enforce the ordinance, and there is no evidence that the fine contemplated by the ordinance would be an effective remedy, as Balcones Woods notes by Daniels's willingness to spend "much more than $40 to defend his right to park on his grass." Furthermore, Daniels did not provide evidence that his property is subject to the city ordinance, or explain how enforcement of the ordinance would provide an adequate remedy to Balcones Woods. We overrule Daniels's sixth issue.

15

## CONCLUSION

Based on the record before us, we find that the district court properly issued the permanent injunction. We affirm the order of the district court.

_____

W. Kenneth Law, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: February 2, 2006