ACCEPTED
01-15-00091-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/26/2015 3:57:17 PM
CHRISTOPHER PRIN
CLERK

**No. 01-15-00091-CV**

═══════════════════════════════════════

**IN THE FIRST COURT OF APPEALS**
**HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/26/2015 3:57:17 PM
CHRISTOPHER A. PRINE
Clerk

———————————————————

**NUEVA GENERACION MUSIC GROUP, INC.**

*Plaintiff-Appellant*

**v.**

**ISIDRO CHAVEZ ESPINOZA P/K/A ESPINOZA PAZ**

*Defendant-Appellee*

———————————————————

**On Appeal from the Harris County District Court,**
**281st Judicial District**
**Trial Court Case Number: 2015-00749**

**Oral Argument Requested**

———————————————————

**APPELLANT'S BRIEF ON ACCELERATED INTERLOCUTORY APPEAL**

———————————————————

YOCEL ALONSO
ATTORNEY & COUNSELOR AT LAW
Tex. Bar No. 01109100
130 Industrial Boulevard, STE. 110
P.O. BOX 45
Sugar Land, Texas 77487
Telephone: 281-240-1492
Email: yocelaw@aol.com

*Attorney for Plaintiff-Appellant*
*Nueva Generación Music Group, Inc.*

═══════════════════════════════════════

# IDENTITY OF PARTIES AND COUNSEL

Plaintiff/Appellant:           NUEVA GENERACION MUSIC GROUP, INC.

Attorney for Appellant:     YOCEL ALONSO
ATTORNEY & COUNSELOR AT LAW
Tex. Bar No. 01109100
130 Industrial Boulevard, STE. 110
P.O. BOX 45
Sugar Land, Texas 77487-0045
Telephone: (281) 240-1492
Email: yocelaw@aol.com

Defendant/Appellee:        ISIDRO CHAVEZ ESPINOZA P/K/A
ESPINOZA PAZ

Attorneys for Appellee:     XAVIER V. CHAVEZ
XAVIER LAW FIRM
Tex. Bar No. 24069495
25775 Oak Ridge Dr., Ste. 120
The Woodlands, Texas 77380
Tel.:  (281) 296-3741
Fax:  (281) 296-3879
Email: xavier@xavierlawfirm.com

**TABLE OF CONTENTS**

IDENTITY OF PARTIES ...........................................................................................................i

TABLE OF CONTENTS .........................................................................................................ii

INDEX OF AUTHORITIES ................................................................................................... iii

STATEMENT OF THE CASE ................................................................................................1

STATEMENT REGARDING ORAL ARGUMENT .............................................................2

ISSUES PRESENTED ............................................................................................................2

STATEMENT OF FACTS ......................................................................................................3

      A.  **Relationship Between Nueva and Espinoza** .......................................................3

      B.  **Resolution and Settlement of Prior Litigation** ...............................................6

      C.  **Espinoza's Conduct Following the Final Settlement Agreement** .............8

SUMMARY OF THE ARGUMENT ......................................................................................10

ARGUMENT & AUTHORITIES ..........................................................................................12

      A.  **Standard of Review** ..........................................................................................12

      B.  **Espinoza's Failure to Complete the Required Payments of the Final Settlement Agreement Reinstated Nueva's Exclusive Rights under the Exclusive Representation Agreement** ...............................................................13

          1.  *The parties' written expression demonstrates their unambiguous intent to reinstate the Exclusive Representation Agreement* ........................................14

          2.  *Espinoza ratified the Final Settlement Agreement* ........................................19

          3.  *Espinoza misrepresented the "status quo" before the trial court* .................21

      C.  **The Trial Court Abused its Discretion When It Failed to Issue a Negative Injunction Against Espinoza** ..........................................................................24

          1.  *Nueva established a probable right to relief* ..................................................26

          2.  *Espinoza continues to breach the negative covenant* ....................................28

          3.  *Espinoza's services are unique and extraordinary* .......................................29

          4.  *Nueva has no remedy at law* ..........................................................................31

PRAYER FOR RELIEF ........................................................................................................33

# INDEX OF AUTHORITIES

**Cases**

*Alba Tool and Supply Company, Inc. v. Industrial Contractors, Inc.,* 585 S.W. 2d 662 (Tex. 1979) .................................................................................................................... 17

*Am. Med. Techs, Inc. v. Miller*, 149 S.W.3d 265, 271 (Tex. App.—Houston [14th Dist.] 2004, no pet.) .................................................................................................................... 20

*Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199 (Tex. App.--Houston [1st Dist.] 2004, rev. denied) ................................................................................................................ 15, 19

*Amigo Broad. v. Spanish Broad.*, 521 F.3d 472, 487-488 (5th Cir. 2008) ...................................... 25

*Barker v. Roelke*, 105 S.W.3d 75, 84-85 (Tex. App.—Eastland 2003, rev. denied) ...................... 20

*Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2005, rev. denied) ................................................................................................ 14

*Baylor Coll. Of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, rev. denied) ................................................................................................ 27

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) .................................................. 21, 22

*Cherco Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 265 (Tex. App.—Fort Worth 1999, no pet.) ................................................................................ 15, 17

*Compania Financiara Libano, S.A. v. Simmons*, 54 S.W.3d 365, 368 (Tex. 2001) ........................ 26

*Dallas Cowboys Football Club, Inc. v. Harris*, 348 S.W.2d 37, 42 (Tex. App.—Dallas 1961, no writ h.)................................................................................................................. 24, 29

*DeClaire v. G & B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2008, no pet.) .............................................................................................. 18

*Diamond Paint Co. of Houston v. Embry*, 525 S.W.2d 529, 535 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.)................................................................ 19, 20

*E.g., Conlin v. Haun*, 419 S.W.3d 682, 686 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ......... 13

*E.g., In re Labatt Food Serv. L.P.*, 279 S.W.3d 640 643 (Tex. 2009) ........................................... 13

*ExxonMobil Corp. v. Valence Oper. Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, rev. denied) .......................................................................................... 26

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ................................................ 14

*Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996) ................................ 18

*Houston Oilers, Inc. v. Neely*, 361 F.2d 36, 40 (10th Cir. 1966) ...................................................... 24

*Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 892 (Tex. App--Houston [1st Dist.] 2011, no pet.) ...................................................... 13, 33

*Jim Rutherford Invs. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, rev. denied) ...................................................... 24

*Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 757 (Tex. 1980).................... 20

*Luckel v. White*, 819 S.W.2d 459, 462, 463 (Tex. 1991) ................................................. 14

*Lumley v. Wagner*, 1852, 42 English Rep. 687 (Ch. 1952)............................................. 11, 24, 30, 32

*Marcus v. Whispering Springs Homeowners Ass'n*, 153 S.W.3d 702, 707 (Tex. App.—Dallas 2005, no pet.) ...................................................... 24

*Matuszak v. Houston Oilers, Inc.*, 515 S.W.2d 725 (Tex. App.—Houston [14th Dist.] 1974, no writ h.) ...................................................... 29

*MCI Telecomms. Corp. v. Texas Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex. 1999) ...................... 12

*Mission Indep. School Dist. v. Diserens*, 188 S.W.2d 568, 570 (Tex. 1945) ..... 12, 24, 25, 29, 30, 32

*Munson v. Milton*, 948 S.W.2d 813, 815 (Tex. App.—San Antonio 1997, rev. deied) ................... 24

*Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193 (Tex. 1962) ...................................... 14

*Old Republic Ins. Co., Inc. v. Fuller*, 919 S.W.2d 726, 728 (Tex. App.—Texarkana 1996, writ denied) ...................................................... 20

*Padilla v. LaFrance*, 907 S.W.2d 454, 460, 461 (Tex. 1995)....................................................... 15, 26

*Sacks v. Haden*, 266 S.W.3d 447 (Tex. 2008) ................................................. 18

*Savoy Record Co. v. Mercury Record Corp.*, 108 F. Supp. 957, 959 (D. N.J. 1952) ...................... 24

*Sears, Roebuck & Co. v. Commercial Union Ins. Corp.*, 982 S.W.2d 151, 154 (Tex. App.—Htn. [1st Dist.] 1998, no pet.)........................................................... 18

*Shubert Theatrical Co. v. Rath*, 271 F. 827 (2nd Cir. 1921) ...................................................... 30, 32

*Sonat Exploration Co. v. Cudd Pressure Control, Inc.,* 271 S.W.3d 228, 231 (Tex. 2008) ............ 13

*Spellman v. Am. Universal Inv. Co.*, 687 S.W.2d 27, 29-30 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) ...................................................... 20

*Telephone Equip. Network, Inc. v. Tal Westchase Place, Ltd.*, 80 S.W.3d 601 (Tex. App.--Houston [1st Dist.] 2002, no pet.) ...................................................... 33

*Texas State Optical, Inc. v. Wiggins*, 882 S.W.2d 8, 11 (Tex. App.—Houston [1st Dist.] 1994, no writ) ................................................................................................................ 13

*Titus v. Superior Court, Maricopa Cnty.*, 368 P.2d 874, 875 (Ariz. 1962) ...................................... 24

*Verizon Corporate Servs. v. Kan Pak Sys.*, 290 S.W.3d 899, 905-908 (Tex. App.—Amarillo 2009, no pet.) ........................................................................................................... 20

*Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679 (Tex. App.—Dallas, 1984, no writ h.) ......... 15

*Wetzel v. Sullivan, King & Sabom*, 745 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1988, no writ h.) ................................................................................................................ 19

*Woods v. Sims*, 273 S.W.2d 617, 620 (Tex. 1954) ......................................................................... 14

*Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1990, no writ h.) ........... 19

**Other Authorities**

42 Am.Jur.2d *Injunctions* § 130 (2003) ......................................................................................... 25

RESTATEMENT (Second) OF THE LAW OF CONTRACTS § 230 ............................................................. 14

**Statues**

Tex. R. Civ. P. 11 ........................................................................................................................... 26

## STATEMENT OF THE CASE

1.      This is an accelerated appeal of the trial court's denial of a request to issue a temporary injunction. On January 7, 2015, Nueva Generación Music Group, Inc. ("Nueva") filed its Original Petition and Application for Temporary and Permanent Injunctive Relief against Isidro Chavez Espinoza, professionally known as Espinoza Paz ("Espinoza"), a Latin music artist formerly represented by Nueva. The lawsuit was filed because Espinoza has disavowed and breached the terms of the Final Settlement Agreement in case number 2013-64241 (the "2013 Case") entered into by the parties on February 25, 2014 (the "Final Settlement Agreement"), and filed with the trial court under Rule 11 of the Texas Rules of Civil Procedure. This Final Settlement Agreement released the claims in the 2013 Case and also a California lawsuit that was filed by Espinoza after the filing of the 2013 Case. Specifically, Espinoza retained other representatives to book his performances despite failing to make the final payment of $3,500,000 by December 31, 2014, disavowed Nueva's right to receive commissions from his music publishing in violation of the Final Settlement Agreement and the prior Exclusive Personal Representation Agreement of March 9, 2009 (the "Exclusive Representation Agreement"), which was incorporated into the Final Settlement Agreement.

2.      On January 22, 2015, the Honorable Sylvia Matthews, Presiding Judge of the 281st Judicial District of Harris County, conducted a hearing on Nueva's application for a temporary injunction seeking to enjoin Espinoza from engaging

third-parties in the Entertainment Industries as defined in the said Exclusive Representation Agreement. On January 26, 2015, Judge Matthews denied Nueva's application for a temporary injunction. The order states that Nueva failed to satisfy its burden of proof on the application, ignoring the undisputed evidence and controlling case law.

3. On January 27, 2015, Nueva filed its notice of accelerated interlocutory appeal. The Reporters Record, which includes the transcript of the January 22, 2015 Hearing on Plaintiff's Application for Temporary Injunction, was filed on February 9, 2015. The Supplemental Reporters record, which includes the transcript of the February 6, 2015 Hearing on Plaintiff's Motion for Reconsideration, was filed on February 10, 2015. The Clerk's Record was filed on February 12, 2015.

## STATEMENT REGARDING ORAL ARGUMENT

4. Because of the ongoing nature of Nueva's injuries and Espinoza's wrongful actions, Nueva requests oral argument only to the extent the Court believes it will assist it with deciding the appeal more expeditiously. The issues are straightforward and can be resolved on the papers.

## ISSUES PRESENTED

A. Did the trial court abuse its discretion by denying a temporary injunction?

Was this error when:

a. the Final Settlement Agreement requires Espinoza to render his

unique and extraordinary services on Nueva's behalf ; and

    b. Espinoza ratified the Final Settlement Agreement by executing the Joint Motion and Order to Dismiss the 2013 Case which expressly reserved the trial court's "right to enforce the Final Settlement Agreement."

B.    The appeal thus presents two overarching legal questions:

    a. Did the trial court fail to follow the controlling law and therefore abuse its discretion by denying a temporary injunction that restrained Espinoza from engaging the services of third-party representatives following the reinstatement of the Exclusive Representation Agreement?

    b. After ratifying the Final Settlement Agreement, does the law permit Espinoza to defend his breach of the Final Settlement Agreement by re-litigating the same claims that were raised in the 2013 Case and the California lawsuit and which were settled and released by the Final Settlement Agreement?

## STATEMENT OF FACTS

### A.    Relationship Between Nueva and Espinoza

5.    Nueva is an artist representative which promotes its artists' careers in the entertainment industry. 1 R.R. at 9-10. It does so by advising and representing its

artists on performances, recordings, endorsements, music publishing, and sponsorships, *Id.*; 1 C.R. at 35-6, including the approval of recording contracts, national and international tours, publishing deals, and placement of an artist's work in television and film. 1 R.R. at 9-10; 1 C.R. at 35-6.

6. Defendant Espinoza is one such artist represented by Nueva. 1 C.R. at 34-46. Espinoza is a Latin music songwriter and artist with unique and extraordinary talents and skills. 1 R.R. at 11; 1 C.R. at 37. On March 9, 2009, Nueva and Espinoza entered into an Exclusive Representation Agreement under which Nueva agreed to provide personal representation services as described above to Espinoza. 1 R.R. at 11-12; 1 C.R. at 33-46. Espinoza, in return, agreed to use Nueva as his exclusive representative in all aspects of the entertainment, amusement, music publishing, films, personal appearances, theater and literary industries, including all forms of publicity, sponsorships, merchandise, exchanges or uses of Espinoza's name, photograph, voice, sound effects, image, caricatures, talents, or materials, and including, without limitation, Espinoza's activities in any capacity within the entertainment industry, such as a live singer, recording artist, musician, composer, writer, publisher, arranger, packager, owner of entertainment packages, actor, producer, author, director, cameraman, technician, consultant, and in personal appearances and public appearances which incorporate Espinoza's voice, image, and talents (collectively the "Entertainment Industry" or "Entertainment Industries"). 1 C.R. at 35-6.

7.     In consideration of Nueva's promises to provide career opportunities for Espinoza, the Exclusive Representation Agreement stipulated that Nueva would receive thirty percent (30%) of gross revenues, less expenses, received by Espinoza for the performance of his services. 1 C.R. at 35. In addition, the parties agreed that the term of the Exclusive Representation Agreement would be for five (5) years, with Nueva having options to renew for additional five (5) year periods, which have been exercised. 1 C.R. at 34.

8.     Espinoza was an unknown artist when in 2007 Nueva began a significant amount of time and energy promoting, advancing, and preparing Espinoza for success; including providing housing and launching his career as an artist on Mexican television. 1 R.R. at 12-13, 27. Following Nueva's successful launch of his career as an artist, Espinoza began systematically violating his Exclusive Representation Agreement. 1 R.R. at 13; 1 C.R. at 6-10, 18. Espinoza interfered with Nueva's contractual duty to provide him employment opportunities, sponsorships, and endorsements by failing to participate in negotiations or communicate with regard to business opportunities. 1 C.R. at 6-10, 18. Moreover, Espinoza reneged on numerous contracts and engagements entered into by Nueva on his behalf. *Id.* Finally, Espinoza attempted to wrongfully and unilaterally terminate the Exclusive Representation Agreement. As a result, Nueva was forced to bring suit against Espinoza to enforce the Exclusive Representation Agreement in the district court of Harris County, Texas, Case No. 2013-64241. 1 C.R. at 10, 18.  Espinoza then filed a suit against Nueva on

5

February 5, 2014, under Case Number BC535473 in the Superior Court of the State of California, County of Los Angeles, claiming fraud, misrepresentation, breach of fiduciary duty, and a laundry list of purported grievances. 1 R.R. at 17; 1 C.R. at 10, 18.

## B.    Resolution and Settlement of Prior Litigation

9.    On February 25, 2014, the parties, assisted by their counsel, executed the document titled "Final Settlement Agreement," which, following agreed-upon contingencies, would dispose of the claims brought by both parties in the courts of Texas and California. 1 C.R. at 21-32. The agreement provided Espinoza two methods of remediating his earlier breach of the Exclusive Representation Agreement. 1 C.R. at 22-4. In the first instance, Espinoza could pay, over the course of the year 2014, a total of $4,500,000 and thereby terminate the contractual relationship between the parties. 1 C.R. at 22-3. The payment plan required Espinoza to meet benchmark payments throughout the year as follows:

- on February 28, 2014, Espinoza would wire $600,000 to Nueva's account;

- on March 11, 2014, Espinoza would wire an additional $400,000 to Nueva's account; and

- on December 31, 2014, Espinoza would wire the final $3,500,000 to Nueva's account. *Id.*

10.    The effect of Espinoza meeting the required payments by the deadlines above would terminate the relationship between the parties, thereby resolving the

6

dispute. 1 C.R. at 23. However, until the total of $4,500,000 was paid to Nueva, the Exclusive Representation Agreement, incorporated into the Final Settlement Agreement, would remain in effect with the exception that Espinoza would not be required to remit the 30% commission until January 1, 2015. *Id.*

11.    In addition to the benchmark payments, Nueva included a fallback provision, which would go into effect if Espinoza failed to meet any of his payment obligations under the Final Settlement Agreement. Under Paragraph 2 of the Final Settlement Agreement, if Espinoza failed to remit the appropriate payments, the Exclusive Representation Agreement's 30% commission requirement would be reinstated. 1 C.R. at 23-4.

12.    A modification to the commission clause in Paragraph 8 of the Exclusive Representation Agreement was included in the Final Settlement Agreement. *Id.* The modification stated that the Exclusive Representation Agreement would terminate once Nueva's 30% commission cumulatively amounts to $4,500,000 less any payments made by Espinoza during 2014. *Id.* The Final Settlement Agreement incorporated the Exclusive Representation Agreement completely and outlined no other modifications other than to Paragraph 8. *Id.* The Final Settlement Agreement states expressly that it is the complete understanding of the parties, and that by executing the Final Settlement Agreement, neither party was "relying on any promise or verbal agreement not contained in [the Final Settlement Agreement]." 1 C.R. at 24-25.

**C.    Espinoza's Conduct Following the Final Settlement Agreement**

13.    Espinoza failed to comply with the Final Settlement Agreement almost immediately, by not making the first payment of $600,000 by the specified date of February 28, 2014. 1 R.R. at 15. As a result, Nueva was required to seek a temporary restraining order and enforcement of the Final Settlement Agreement before Espinoza ultimately remitted payment. *Id.* Espinoza then also remitted the second payment of $400,000. *Id.*

14.    Subsequently, and in conformity with the Final Settlement Agreement, the parties filed a Joint Motion to Dismiss the prior suit in Harris County on March 14, 2014, which was granted by the trial court on March 21, 2014. 1 C.R. 47. Significantly, the Motion and Order to Dismiss, both signed by Espinoza's lawyer, specifically reserves the Court's right to "enforce the Final Settlement Agreement." 1 C.R. 47.

15.    Espinoza failed to make the final payment of $3,500,000 by December 31, 2014. 1 R.R. at 17-18. Espinoza's failure to keep his commitment under the Final Settlement Agreement activated Nueva's fallback position. 1 C.R. at 23-4. Under the Final Settlement Agreement, on January 1, 2015, the Exclusive Representation Agreement was reinstated in full, including Nueva's right to a 30% commission on all entertainment-related income. *Id.*

16.    On or about January 7, 2015, Nueva learned that Espinoza contracted to perform concerts in Pharr, Texas, and Laredo, Texas, on January 23rd and 24th, 2015.

8

1 C.R. at 7, 18. Nueva also learned that Espinoza contracted to perform in Chandler, Arizona, on February 13, 2015. *Id.* Nueva learned that Espinoza had contracted with and was being represented by third-parties for procuring, arranging, and executing these and other contracts for performances in Mexico and the United States. 1 R.R. 18-19; 2 R.R. PX 6, 7, and 8. Because Espinoza employed third-parties to represent him in the Entertainment Industries contrary to the Exclusive Representation Agreement, Nueva brought suit for breach of the Final Settlement Agreement and injunctive relief. 1 C.R. 3-18. The Petition and Application for Temporary and Permanent Injunctive Relief, filed on January 7, 2015, requested the trial court to exercise its jurisdiction under the Joint Motion to Dismiss and Final Settlement Agreement by preventing Espinoza from further breaching his duties under the Final Settlement Agreement and irreparably harming Nueva by ignoring its exclusive right of representation. *Id.*

17.    Nueva proved, without contradiction, that Espinoza publicly admitted to engaging the services of third-parties to represent him in Entertainment Industries. 2 R.R. Pl. Ex. 6-9; 1 C.R. at 52-3. Espinoza's actions damage Nueva's reputation, the willingness of third-parties to work with Nueva, as well as promote the businesses of Nueva's competitors and any chance that it has to recover money damages. 1 R.R. at 19-23. Espinoza argued, without the support of a scintilla of evidence and contrary to the unequivocal terms of the Final Settlement Agreement, that he never intended for the Final Settlement Agreement to reinstate Nueva's exclusive rights under the

Exclusive Representation Agreement. 1 R.R. at 25; 1 C.R. at 59, 92-4, 99-103. In support, Espinoza offered no evidence, but attached Nueva's motion for reconsideration to his response, in attempt to unilaterally terminate the Exclusive Representation Agreement **before** the Final Settlement Agreement was executed. 1 C.R. at 86-91. Espinoza also attached self-serving and inadmissible communications from his attorney to Nueva's attorney attempting to renegotiate the formally executed Final Settlement Agreement. 1 C.R. at 73, 92-108. These were also not admitted into evidence, do not support his arguments, and are inadmissible as a matter of law under the parol evidence rule.

18.    Significantly, at the hearing, Espinoza's lawyer also admitted that the Final Settlement Agreement reinstates the Exclusive Representation Agreement, but Espinoza believes that only certain provisions of the Exclusive Representation Agreement are reinstated. 1 R.R. at 37. Of course, Espinoza presented no evidence in support of that proposition. Regardless, Espinoza continues to breach the Final Settlement Agreement by soliciting and accepting representation in Entertainment Industries by third-parties. 1 R.R. at 20-23; 2 R.R. Pl. Ex. 6-9. Moreover, Espinoza has failed to remit any payments to Nueva for the commission on his performances. 1 C.R. at 56.

## SUMMARY OF THE ARGUMENT

"[W]herever this Court has not proper jurisdiction to enforce specific performance, it operates to bind men's consciences, as far as they can be

bound, to a true and literal performance of their agreements; and it will not suffer them to depart from their contracts at their pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give." *Lumley v. Wagner*, 42 English Rep. 687 (Ch. 1952).

19. The trial court's order denying the temporary injunction ignores the undisputed evidence and well-settled controlling law in the State of Texas. It was therefore an abuse of the court's discretion to not enjoin Espinoza from soliciting and employing third-party representatives to further his artistic career in the Entertainment Industry. The Exclusive Representation Agreement expressly states that Nueva is Espinoza's exclusive representative in Entertainment Industries. Espinoza agrees that his personal services are unique and extraordinary, and no substitute for those services exists. Espinoza admitted to seeking out and utilizing alternative representation. Espinoza also admitted to soliciting and performing services for third-party representatives in the Entertainment Industry in violation of the exclusivity rights granted to Nueva in the Exclusive Representation Agreement. Because Espinoza failed to meet the payment deadlines and abide by the Final Settlement Agreement, which he ratified, the Final Settlement Agreement is now in full force and effect.

20. Contrary to Espinoza's unsupported arguments during the injunction and reconsideration hearings, the Final Settlement Agreement is a final, integrated agreement between the parties. Espinoza also ratified the terms of the Final

11

Settlement Agreement initially by remitting $1,000,000 to Nueva, relying on the suspension of the commissions in the incorporated Exclusive Representation Agreement, filing a Joint Motion to Dismiss the prior lawsuit in Texas, and non-suiting the California lawsuit. Thus, the provisions in the Final Settlement Agreement, incorporating the Exclusive Representation Agreement and its terms, are controlling. No amount of *pro hoc* posturing by Espinoza changes his assent to the Final Settlement Agreement or its terms.

21. The law is well-settled, going back to 1852, that a negative injunction is appropriate under these circumstances. A negative injunction is the appropriate remedy when an artist violates an exclusive personal services contract by utilizing third-party representatives in violation of that negative covenant. Nueva has no remedy at law to replace Espinoza's unique and extraordinary services. In such a case, Texas has adopted the long-standing tradition of enjoining a party from performing services for others during the term of a contract which includes a negative covenant, as held by the Texas Supreme Court in *Mission Indep. School Dist. v. Desirens*, 188 S.W.2d 568 (Tex. 1945). This controlling case was not followed by the trial court.

## ARGUMENT & AUTHORITIES

### A. Standard of Review

***Review of legal questions***

22. Legal questions are always reviewed *de novo*. *MCI Telecomms. Corp. v.*

*Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). Choosing the applicable law presents a legal question and is reviewed *de novo*. See *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). Questions about the enforceability of contracts are reviewed *de novo. E.g., In re Labatt Food Serv. L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

### *Denial of a temporary injunction*

23. The denial of a temporary injunction is reviewed for an abuse of discretion. *E.g., Conlin v. Haun*, 419 S.W.3d 682, 686 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or when it clearly fails to correctly analyze or apply the law. *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 892 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court also abuses its discretion when it does not apply the controlling law to the facts in arriving at its decision. *Texas State Optical, Inc. v. Wiggins*, 882 S.W.2d 8, 11 (Tex. App.—Houston [1st Dist.] 1994, no writ).

### B. Espinoza's Failure to Make the Required Payments of the Final Settlement Agreement Renewed Nueva's Exclusive Rights under the Exclusive Representation Agreement

24. At the heart of Espinoza's defenses is his position that the document titled "Final Settlement Agreement" is not, in fact, a final settlement agreement. However, he has offered no law or evidence to support this position. The law

provides that "(w)hen constructing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). It is the written expression, not one party's "actual intent," that governs proper interpretation of an agreement. *See Luckel v. White*, 819 S.W.2d 459, 462, 463 (Tex. 1991) ("Even if the court could discern the actual intent, it is not the actual intent of the parties that governs, but the actual intent of the parties as expressed in the instrument as a whole, without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules." (internal quotations omitted)). When a contract is unambiguous, construction of the written instrument is a question of law for the court. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193 (Tex. 1962). In addition, when the court considers the construction of an unambiguous contract, the instrument alone will be deemed to express the objective manifestation of the parties' intent. *Woods v. Sims*, 273 S.W.2d 617, 620 (Tex. 1954); *see also* RESTATEMENT (Second) OF THE LAW OF CONTRACTS § 230.

### 1. The parties' written expression demonstrates their unambiguous intent to reinstate the Exclusive Representation Agreement.

25.     The Final Settlement Agreement is a complete, integrated document, which unambiguously establishes the parties' intent. A written instrument presumes that all prior agreements relating to the transaction are merged and enforced as written. *See Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2005, rev. denied). A merged document cannot be added

14

to, varied, or contradicted by extrinsic testimony or evidence. *Id.* This rule is especially relevant when the written agreement contains a clause stating that it is the entire agreement between the parties, or some other similar merger clause. *See Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679 (Tex. App.—Dallas 1984, no writ h.).

26. The trial court erred in interpreting the Final Settlement Agreement as a matter of law, apparently construing it in light of Espinoza's attempts to improperly inject ambiguity through irrelevant arguments and non-existent evidence. A written settlement agreement satisfies Texas Rule of Civil Procedure 11 when it "is complete within itself as to every material detail and contains all the essential elements of the agreement, so the contract can be ascertained from the writing without resort to oral testimony." *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199 (Tex. App.—Houston [1st Dist.] 2004, rev. denied); *Cherco Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 265 (Tex. App.—Fort Worth 1999, no pet.) (citing *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995)).

27. The Final Settlement Agreement, agreed to and executed by the parties and their respective lawyers, is a proper Rule 11 Agreement in every way. It contains all of the material terms of the agreement, namely a specified sum of money in exchange for settlement of all claims. *See Padilla*, 907 S.W.2d at 461 (Tex. 1995).

28. The Final Settlement Agreement also includes a fallback position for Nueva if Espinoza fails to pay the money in total or on time. It contains all of the

material terms for this fallback position as well: the Exclusive Representation Agreement will be reinstated, with the exception that it will terminate following Nueva's collection of $4,500,000, less any payments made by Espinoza under Paragraph 1 of the Final Settlement Agreement. 1 C.R. at 22-24. In both circumstances, the parties dispose of all prior claims made in the 2013 Case and the California lawsuit. The parties agreed that the Final Settlement Agreement is an integrated and merged agreement. 1 C.R. at 24. No oral testimony is required to interpret the Final Settlement Agreement. 1 C.R. at 25.

29. Espinoza argues, without proof, that the Final Settlement Agreement is not truly "final," and that it does not afford Nueva its exclusive rights under the Exclusive Representation Agreement. 1 C.R. at 54-5. Espinoza also takes the position, again without authority, that because the agreement titled "Final Settlement Agreement" was handwritten, it was not a final version. 1 C.R. at 55. Additionally, Espinoza asserts, without any proof, that the Final Settlement Agreement does not include clauses that he intended to include, arguing that other verbal agreements, which are not referenced or included in the Final Settlement Agreement in any way, formed the basis for the agreement. 1 C.R. at 54-5. Espinoza presented argument without authority at the injunction hearing that the Final Settlement Agreement was handwritten and therefore, not a final memorialization of the agreement between the parties. *Id.* Finally, because the document is handwritten, he urged the court to consider extrinsic evidence to interpret the Final Settlement Agreement. 1 C.R. at 80-

16

**2. Espinoza's argument amounts to a logical fallacy, easily discarded under controlling law.**

30.    First, the fact that the Final Settlement Agreement is a handwritten Rule 11 Agreement has absolutely no bearing on its completeness. *See generally Cherco Props., Inc. v. Law, Snakard & Gambill*, *P.C.*, 985 S.W.2d 262 (Tex. App.—Fort Worth 1999, no pet.) (finding that a handwritten Rule 11 settlement, so long as it meets the requirements of Rule 11, is enforceable as written). This is nonsense and, in fact, the law is 100% to the contrary—handwritten agreements are actually favored in Texas jurisprudence. *Alba Tool and Supply Company, Inc. v. Industrial Contractors, Inc.,* 585 S.W. 2d 662 (Tex. 1979). The Final Settlement Agreement itself resolves the issue of completeness and enforceability under Rule 11. The document is titled "Final Settlement Agreement." The document resolved the pending disputes in both Texas and California. 1 C.R. at 24. The Final Settlement Agreement states clearly that it is the complete understanding of the agreements between the parties and releases each, respectively, of all claims and lawsuits with the exception of the Exclusive Representation Agreement. 1 C.R. at 25. The document further states that any claims arising from the Exclusive Representation Agreement are actionable until Espinoza pays the agreed $4,500,000. 1 C.R. at 24-25. The document is a "final agreement and, if necessary, it may be filed under Rule 11;" and was ultimately filed with the trial court under Rule 11. 1 C.R. at 25, 47. Finally, the document states that neither party is "relying on any promise or verbal agreement not contained in [the

17

Final Settlement].” 1 C.R. at 25.

31.     Second, Espinoza’s arguments attempt to infuse the record with purported extrinsic evidence which should not have been considered by the trial court. Not only was no evidence offered by Espinoza to support these arguments, but also any such “evidence” is inadmissible under the parol evidence rule. *Sacks v. Haden*, 266 S.W.3d 447 (Tex. 2008); *DeClaire v. G & B McIntosh Family Ltd. P’ship*, 260 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2008, no pet.)

32.     Of course, a court may not consider extrinsic evidence in order to *create* an ambiguity in a contract. *Sears, Roebuck & Co. v. Commercial Union Ins. Corp.*, 982 S.W.2d 151, 154 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Extrinsic evidence to contradict or aid a court in interpreting a contract is only admissible if the contract is first determined to be ambiguous. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996). Espinoza filed papers, not admitted as evidence, of emails sent to Nueva’s counsel immediately following the execution of the Final Settlement Agreement. 1 C.R. at 56, 82. The emails do not support any viable argument and essentially request that Nueva accept an entirely different settlement agreement, which would strip it of its exclusivity rights entirely. 1 C.R. at 92-108. Simply because these documents exist, Espinoza argues without authority, that the trial court must use them to interpret the Final Settlement Agreement. 1 C.R. at 54-6, 80-2.

33.     The Final Settlement Agreement on its face is an enforceable Rule 11

Agreement. 1 C.R. at 25. As discussed in more detail below, Espinoza accepted and expressly acknowledged the authority of that agreement. Try as he might, Espinoza's defense only adds up to irrelevant arguments and wishful thinking unsupported by any evidence. Espinoza offers no legal authority for his arguments, because there is none. On the contrary, this court has held that a Rule 11 Agreement is entitled to enforcement, even when "the parties advance conflicting interpretations of their agreement." *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199 (Tex. App.—Houston [1st Dist.] 2004, rev. denied.).

### 2. *Espinoza ratified the Final Settlement Agreement.*

34. The evidence before the trial court established without any doubt, that Espinoza ratified the Final Settlement Agreement as a complete and final disposition of the parties' prior claims. At the hearing, Espinoza did not deny, because he cannot deny, that the Final Settlement Agreement was ratified in the motion and order to dismiss the 2013 Case. Espinoza simply does not want to face the inconvenient fact that he ratified the Final Settlement Agreement **after** the (inadmissible) emails on which he bases his defense. Ratification of a contract "occurs when a party recognizes the validity of a contract by acting under it, performing under it, or affirmatively acknowledging it." *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1990, no writ h.) (citing *Wetzel v. Sullivan, King & Sabom*, 745 S.W.2d 78, 81 (Tex. App.—Houston [1st Dist.] 1988, no writ h.)). Ratification may be express or implied by a party's course of conduct. *Diamond Paint Co. of Houston*

*v. Embry*, 525 S.W.2d 529, 535 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). A party may not ratify a contract "and subsequently seek to avoid the contract." *Am. Med. Techs., Inc. v. Miller*, 149 S.W.3d 265, 271 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citations omitted). A party's ratification of an agreement applies to the entire agreement and not just the self-serving, cherry-picked provisions thereof. *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 757 (Tex. 1980) ("Ratification extends to the entire transaction.")). Whether a party has ratified a contract may be determined as a matter of law if the evidence of ratification is not controverted or is incontrovertible. *Barker v. Roelke*, 105 S.W.3d 75, 84–85 (Tex. App.—Eastland 2003, rev. denied); *Old Republic Ins. Co., Inc. v. Fuller*, 919 S.W.2d 726, 728 (Tex. App.—Texarkana 1996, writ denied).

35. Espinoza's ratification of the Final Settlement Agreement is incontrovertible. Texas courts find conduct in conformity with a contract to evidence ratification of that contract, so long as the performing party knew all of the material terms of that contract. *See Verizon Corporate Services. v. Kan Pak Sys.*, 290 S.W.3d 899, 905-908 (Tex. App.—Amarillo 2009, no pet.); *Spellman v. Am. Universal Inv. Co.*, 687 S.W.2d 27, 29–30 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.). Espinoza and his lawyer were both present at the negotiations and execution of the Final Settlement Agreement. 1 C.R. at 53. The Final Settlement Agreement was drafted in Espinoza's native tongue, and he initialed each page before signing his name in execution thereof, as witnessed by his attorney. 1 C.R. at 29-32. By signing

20

and executing the Final Settlement Agreement, the parties agreed that neither was "relying on any promise or verbal agreement not contained in [the Final Settlement]." 1 C.R. at 25.

36. Espinoza, apparently intending to avoid his payment obligations, recognized that he failed to negotiate restrictions to the exclusivity rights incorporated into the Final Settlement Agreement, after the parties executed the document.

37. After the February 26 exchange of emails attached to Espinoza's court papers, and to avoid the issuance of a temporary restraining order, Espinoza remitted the first two payments in conformity with Paragraph 1(B) of the Final Settlement Agreement. 1 R.R. at 15. Following Espinoza's cumulative payment of $1,000,000, and in accordance with Paragraph 4 of the Final Settlement Agreement, the parties filed a Joint Motion to Dismiss the prior suit in Texas on March 21, 2014, and Espinoza non-suited his case in California. 2 R.R. Pl. Ex. 2; 1 C.R. at 24, 47. Each of these actions taken by Espinoza constitute express acknowledgement of the Final Settlement Agreement, thereby ratifying it as a complete and integrated disposition of the parties' claims. The trial court abused its discretion in failing to find that Espinoza acknowledged, acted under, and availed himself of the Final Settlement Agreement and all of its material terms.

### 3. Espinoza misrepresented the "status quo" to the trial court.

38. The purpose of a temporary injunction is to preserve the status quo of the

21

subject matter of the litigation until the trial court holds a final hearing on the merits of the case. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). However, before the trial court, Espinoza challenged Nueva's application for temporary injunction on the grounds that it would not preserve the status quo. 1 C.R. at 78-9. As discussed in detail above, Espinoza attempts to mischaracterize the Final Settlement Agreement as an incomplete agreement, citing documentation and writing beyond the integrated and unambiguous agreement. 1 C.R. 24-5. Before the trial court, Espinoza characterized the status quo as one in which Nueva does not represent Espinoza in Entertainment Industries. *Id.* The Final Settlement Agreement unequivocally states otherwise.

39. Espinoza attempts to rely on irrelevant half-truths that were not admitted into evidence. For example, he hangs his hat on the self-serving, inadmissible, purported "termination of agency" document, which predates the Final Settlement Agreement and has no bearing on the relationship of the parties. 1 C.R. at 80, 88-9. More importantly, the purported unilateral termination and the subsequent execution and ratification of the Final Settlement Agreement are mutually exclusive. No modifications were made in the Final Settlement Agreement with regard to Nueva's right of exclusive representation. 1 C.R. 22-5. When the Final Settlement Agreement was signed and executed, the Exclusive Representation Agreement, with the exception of a temporary modification to the 30% commission, was expressly acknowledged and in full effect. 1 C.R. at 23. The Final Settlement Agreement does

not mention any restriction to Nueva's exclusivity in representing Espinoza—and certainly not Espinoza's purported termination letter. It clearly says the opposite, specifically providing that the Exclusive Representation Agreement "shall continue in force and the 30% commission payable to the Plaintiff by the Defendant until $4,500,000.00 is paid to the Plaintiff by the Defendant". 2 R.R. Pl. Ex. 1, at par. 2. If that were not enough, the fact that the parties agreed to the continuation of the Exclusive Representation Agreement actually repeated. The Final Settlement Agreement also states that "(t)he Plaintiff and the Defendant agree to release any claim or lawsuit that exists between the parties, with the exception of the agreements contained in this agreement or the March 9, 2009 agreement…" 2R.R. Pl. Ex. 1, at par. 5.

40.    The only change following Espinoza's failure to remit the final $3,500,000 was the fallback provision reinstating Nueva's right to a 30% commission, and extending the Exclusive Representation Agreement until Espinoza's payments cumulatively amount to $4,500,000. 1 C.R. at 23. Thus, Nueva's exclusive right to represent Espinoza existed immediately following the execution of the Final Settlement Agreement and never changed. The trial court abused its discretion in interpreting the Final Settlement Agreement in light of these irrelevant arguments made by Espinoza.

**C.    The Trial Court Abused its Discretion When It Failed to Issue a Negative Injunction Against Espinoza.**

41.    An applicant seeking to enjoin a party by enforcing a restrictive covenant generally is not required to prove irreparable injury. *Jim Rutherford Invs. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, rev. denied). Rather, the applicant need only show that the non-movant intends to do an act that would breach the covenant. *Marcus v. Whispering Springs Homeowners Ass'n*, 153 S.W.3d 702, 707 (Tex. App.—Dallas 2005, no pet.) (citing *Munson v. Milton*, 948 S.W.2d 813, 815 (Tex. App.—San Antonio 1997, rev. denied)).

42.    More so, when negative covenants are ancillary to contracts involving personal services, injunctive relief will be granted where the non-movant is an individual with "exceptional and unique knowledge, skill and ability in performing the service called for in the contract." *Mission Indep. School Dist. v. Diserens*, 188 S.W.2d 568 (Tex. 1945); *Dallas Cowboys Football Club, Inc. v. Harris*, 348 S.W.2d 37, 42 (Tex. App.—Dallas 1961, no writ h.) (citing *Mission Indep. School Dist. v. Diserens*. *See also Houston Oilers, Inc. v. Neely*, 361 F.2d 36, 40 (10th Cir. 1966) (citing both *Dallas Cowboys Football Club* and *Mission Indep. School Dist* ; *Titus v. Superior Court, Maricopa Cnty.*, 368 P.2d 874, 875 (Ariz. 1962) (citing *Lumley v. Wagner*, 1852, 42 English Rep. 687 (Ch. 1952)); *Savoy Record Co. v. Mercury Record Corp.*, 108 F. Supp. 957, 959 (D. N.J. 1952) ("While a court of equity will not

24

decree specific performance for a contract for personal services, it has the power to enjoin the performances of such services for others and will do so where the services are unique and cannot be purchased from others . . .").

43.  Nueva's exclusive rights in the Exclusive Representation Agreement, as incorporated into the parties' Final Settlement Agreement, form the basis of Nueva's request for temporary injunction. 1 C.R. at 22-5, 34. Under the Exclusive Representation Agreement, Espinoza agreed to be restrained from utilizing the representation of third-parties during the term. 1 C.R. at 34. The parties expressly incorporated the Exclusive Representation Agreement into the Final Settlement Agreement. 1 C.R. at 22. Espinoza's personal service contracts with third-parties are breaches of this covenant. 1 C.R. at 34. These breaches occurred during the term of the Exclusive Representation Agreement, both before and after the execution of the Final Settlement Agreement. 1 C.R. at 6-10, 18, 53-4. Restraining Espinoza from breaching the Exclusive Representation Agreement and, thus, the Final Settlement Agreement, by enforcing the negative covenant not only "does not violate public policy," as loosely argued by Espinoza, but it is a permissible power of the court. *Amigo Broad. v. Spanish Broad.*, 521 F.3d 472, 487–488 (5th Cir. 2008); *see also Mission Indep. School Dist.*, 188 S.W.2d 568; 42 Am. Jur. 2d *Injunctions* § 130 (2003) ("Covenants not to accept employment with anyone but the employer *during the term of the contract* are not opposed to public policy and have been held to be valid.").

25

### 1. *Nueva established a probable right to relief.*

44. The present dispute between the parties is due to Espinoza's failure to agree to the terms of the Exclusive Representation Agreement, incorporated into the Final Settlement Agreement, after failing to discharge all of his payments. The Final Settlement Agreement is a binding agreement which integrates and merges all promises and duties for each of the parties to resolve their prior claims. In addition to the construction and ratification arguments above, and incorporated herein by reference, the Final Settlement Agreement states, in relevant part, "[t]his is a final agreement and, if necessary, it may be filed under Rule 11 of the Texas Rules of Civil Procedure to be enforced by the court with an English translation prepared by a certified translator according to the regulations of the State of Texas." 1 C.R. at 25.

45. Under Rule 11, a settlement agreement is required to be enforced if it is in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. A settlement agreement is enforceable as a contract, even if a final judgment does not include the terms of the agreement. *Compania Financiara Libano, S.A. v. Simmons*, 54 S.W.3d 365, 368 (Tex. 2001). A Rule 11 agreement must be filed prior to enforcement of its provisions. *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). "A trial court has a ministerial duty to enforce a valid Rule 11 agreement." *ExxonMobil Corp. v. Valence Oper. Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, rev. denied). Both parties must consent to enforcement of a Rule 11 agreement at the time

the judgment is rendered by the trial court. *Id.*; *see also Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, rev. denied).

46.     The Final Settlement Agreement was filed and expressly recognized by the trial court in its Order of Dismissal on March 21, 2014. 1 C.R. at 47. Nueva set an injunction hearing on the same issue addressed herein, but Espinoza remitted the first payment under Paragraph 1(A) of the Final Settlement Agreement before the trial court could hear evidence. 1 R.R. at 15. Espinoza remitted payment of $400,000 in conformity with Paragraph 1(B) of the Final Settlement Agreement, triggering the dismissal of the prior pending suits in Texas and California. 1 C.R. at 24, 47. On March 14, 2014, the parties filed a Joint Motion to Dismiss the suit in Texas. The trial court's order dismissing the Texas suit expressly reserves its jurisdiction under the Final Settlement Agreement. 1 C.R. at 47. Consent to enforcement is evident at the time of the trial court's order. In addition, Espinoza enjoyed the benefits of the Final Settlement Agreement. During the period of time from February 25, 2014 to December 31, 2014, the commission provision in the Exclusive Representation Agreement was suspended. 1 C.R. at 23.

47.     The trial court reserved jurisdiction to enforce the Rule 11 Final Settlement Agreement in the March 21, 2014 Order of Dismissal, and thus has a ministerial duty to enforce its terms. Under Texas law, the Final Settlement Agreement and its provisions, including the incorporated Exclusive Representation Agreement, are enforceable as written. Given the uncontroverted evidence of

Espinoza's past and continued breach, Nueva established a probable right of relief. 1 R.R. 18-19; 1 C.R. 6-10, 18. The trial court abused its discretion in failing to exercise its ministerial duty to enforce the Exclusive Representation Agreement's negative covenant.

### 2. *Espinoza continues to breach the negative covenant.*

48. Nueva offered into evidence the uncontradicted testimony of one of its principals, Marisa Caballero. Miss Caballero testified regarding Espinoza's breaches of the Final Settlement Agreement. Specifically, Miss Caballero testified that at least two third-party artist representative agencies contracted with Espinoza to secure performances in violation of the Final Settlement Agreement. 1 R.R. 18-23. Her testimony was corroborated by the documents offered into evidence. 2 R.R. Pl. Ex. 6-9.

49. The record unequivocally shows that Espinoza is working with a company called Frias Entertainment. 1 R.R. 18-21; 2 R.R. Pl. Ex. 6. Frias states on its Website that it represents Espinoza and books his performances throughout the United States. 2 R.R. Pl. Ex. 6. In addition, the record demonstrates that Espinoza is now being represented by a company called Anval Music. 1 R.R. at 19; 2 R.R. Pl. Ex. 7, 8. Anval has also represented Espinoza in Mexico in violation of the Final Settlement Agreement, securing performances in both the largest stadium in Mexico, Estadio Azteca, and another venue called the Amphitheater. 2 R.R. Pl. Ex. 7, 8. The day preceding the temporary injunction hearing, Espinoza announced through

28

traditional and social media that he is beginning a Mexican tour in 2015. 1 R.R. at 21-2. These performances and contracts fall under the definition of Entertainment Industries in the Exclusive Representation Agreement, and are categories Espinoza agreed were exclusively the domain of Nueva. 1 C.R. at 34-6. However, Nueva played no role in advising, approving, or receiving any advances or other compensation for the performances. 1. R.R. at 21-2. Rather, Nueva's competition gains the benefit. The evidence demonstrates Espinoza's indisputable intention to not only violate the Final Settlement Agreement in these discrete instances, but to continue to do so well into the future.

### 3. *Espinoza's services are unique and extraordinary.*

50.    It is proper to provide an applicant injunctive relief to restrain a violation by an individual subject to a negative covenant in a personal services contract if the person is of exceptional and unique knowledge, skill and ability in performing the service or services called for in the contract. *Mission Indep. School Dist. v. Diserens*, 188 S.W.2d 568 (Tex. 1945); *see also Matuszak v. Houston Oilers, Inc.*, 515 S.W.2d 725 (Tex. App.—Houston [14th Dist.] 1974, no writ h.); *Dallas Cowboys Football Club, Inc. v. Harris*, 348 S.W.2d 37 (Tex. App.—Dallas 1961, no writ h.).

51.    The evidence that Espinoza's services are unique and extraordinary was uncontroverted. Not only did Espinoza agree to his unique and extraordinary talents in Paragraph 13 of the Exclusive Representation Agreement, the testimony of Marisa Caballero demonstrates that he is a talented and sought-after songwriter, musician,

and actor. 1 R.R. at 12-14; 1 C.R. at 37. Espinoza makes no attempt to challenge this characterization of this unique skill set. His talents form the basis for the Exclusive Representation Agreement and the contracts which arose from Nueva's representation of Espinoza in various Entertainment Industries, and likely also form the basis for Nueva's competitors to be able to book him on national tours and in large stadiums. 1 R.R. at 21-2; 2 R.R. Pl. Ex. 6-9.

52.   Espinoza's breach of Nueva's exclusive rights, has larger anti-competitive implications that should not have been ignored in the trial court's order denying the injunction application. These considerations are adopted in Texas through *Mission Indep. School Dist. v. Diserens*, and are the focus of the landmark case of *Lumley v. Wagner*, which is included in every first year law students' Contracts casebook. The seminal case in the United States is *Shubert Theatrical Co. v. Rath,* 271 F. 827 (2nd Cir. 1921), a case which dealt with facts that square with the ones at bar.

53.   The injunction in *Lumley*, analogous to the present application, was to prevent opera singer Johanna Wagner from performing for a competitor for better rates. *See Lumley v. Wagner*, 42 English Rep. 687 (Ch. 1952). The Texas Supreme Court has not only adopted *Lumley v. Wagner*, but also expanded it by not restricting a negative injunction to circumstances involving competitors, but stated that the "principles involved have a broader scope." *Mission Indep. School Dist. v. Diserens*, 188 S.W.2d 568, 570 (Tex. 1945). Espinoza's undisputed unique talents and skills as

a songwriter and performer formed the basis of an exclusive personal services contract between the parties. Thus, a negative injunction is properly applicable to the Final Settlement Agreement.

### 4. *Nueva has no remedy at law.*

54. Nueva is seeking to enforce the exclusivity provision in the Exclusive Representation Agreement, which expressly restricts Espinoza from engaging third-party representatives in Entertainment Industries. *Id.* Second, money damages do not account for the total injury to Nueva. Following Espinoza's breach of the Final Settlement Agreement, the Exclusive Representation Agreement is the status quo. The Exclusive Representation Agreement is a personal services contract in which Espinoza:

- "[R]ecognizes and agrees that the talents of [Espinoza] and his abilities are exceptional, extraordinary and unique, and whose loss will not be able to be compensated with any monetary sum." Paragraph 7;

- "[A]grees at all times to attend career commitments and to do what is necessary and desirable to promote [his] career and earnings herein implied." Paragraph 6;

- Agrees to pay Nueva a 30% commission of all compensations for his services through the term of the agreement. Paragraph 8; and

- Binds Nueva as his only and exclusive personal representative in Entertainment Industries for the term. Paragraph 1, 8. 1 C.R. at 34-6.

55.     The Exclusive Representation Agreement includes an implied negative promise, incidental to the affirmative. Specifically, because Espinoza promised to use Nueva exclusively for his representation in Entertainment Industries, he also impliedly promised *not* to use the representation services of third-parties during the term. *See Mission Indep. School Dist. v. Diserens*, 188 S.W.2d 568 (Tex. 1945); *Lumley v. Wagner*, 1852, 42 English Rep. 687 (Ch. 1952); *Shubert Theatrical Co. v Rath*, 271 F.827 (2d Cir. 1921).

56.     Nueva proved that it expended a significant amount of time, energy, and resources in building the career of Espinoza. Nueva's representative stated that it helped him become so successful, that it was able to charge higher rates than it did initially for his services. 1 R.R. at 12-13. Nueva took Espinoza from living in the homes of the persons who represented him, to being a film actor and a nationally renowned artist in the United States and Mexico capable of booking the largest event facility in the country. *Id.*

57.     Nueva is clearly damaged by Espinoza's breach of the affirmative promise to render payment under the Final Settlement Agreement. However, the parties agreed that Nueva could protect itself by reinstating the Exclusive Representation Agreement. 1 C.R. at 23-4. By engaging third-party representatives in violation of the negative covenant in the Exclusive Representation Agreement, Espinoza damages Nueva's reputation and enriches Nueva's competition and rivals in both the United States and Mexico. 1 R.R. at 20-2. No amount of compensation can

account for the injury to Nueva, the other artists on its roster, and its relationships with the publishers, record companies, and Entertainment Industry representatives with whom Nueva has diligently promoted Espinoza. *Id.*

58. Moreover, recovery of money damages is, at best, unreliable in the extreme. Nueva proved without contradiction that collection of Nueva's 30% commission from its third-party representation competitors is impossible, especially for competitors in Mexico. 1 R.R. at 21. In the past, when Nueva has not collected payment directly from the parties for whom Espinoza performs, Espinoza misrepresented the value of the contract and did not pay the commission that was due. 1 R.R. at 21-23. The fact is that that collection of the 30% from Espinoza's present contracts and engagement in Entertainment Industries is, for all practical purposes, a pipe dream because of Espinoza's fraudulent conduct. *Telephone Equip. Network, Inc. v. Westchase Place, Ltd.*, 80 S.W.3d 601 (Tex. App.—Houston [1st Dist.] 2002, no pet.). More so, Espinoza's performance in violation of the Exclusive Representation Agreement directly damages the reputation of Nueva throughout Mexico and the United States and money damages are not an adequate remedy for Espinoza's breach. *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

## PRAYER FOR RELIEF

For the reasons set forth above, Nueva respectfully requests that this Court reverse the trial court's decision to deny Nueva's request for a temporary injunction

and remand with instructions to the trial court to grant Nueva a temporary injunction, preventing Espinoza, his agents, employees, servants, attorneys, and all persons in active concert or participation with him or acting on his behalf are hereby enjoined from:

- wrongfully agreeing to bookings for his performances without notifying Plaintiff;

- accepting or receiving payments under the Agreement without paying the correct commission to Plaintiff;

- interfering with the Plaintiff's bookings and tours of the Defendant's performances;

- interfering with the Plaintiff's negotiated sponsorship opportunities;

- interfering with the Plaintiff's contract negotiations with third-parties under the Agreement;

- attempting to wrongfully prevent Plaintiff from performing under the Agreement;

- continuing his evasion and threats to this court's jurisdiction by forum shopping;

- wrongfully multiplying the proceedings with the intent to thwart this court's dominant jurisdiction, causing havoc and a waste of judicial resources;

- harassing and forcing the Plaintiff to the great financial burden of having to

defend itself against vexatious proceedings, and the resulting disruption of the judicial process, risking the loss of its right to proceed to trial in Harris County;

- attempting to prevent the Plaintiff from fulfilling its contractual and legal obligations; and

- causing a miscarriage of justice.

Nueva further requests that this court grant Nueva all other relief to which it is justly entitled.

Respectfully submitted,

By: /S/ Yocel Alonso_____
Yocel Alonso, TBA #01109100
130 Industrial Blvd., Suite 110
P.O. Box 45
Sugar Land, Texas 77487
Tel.: 281.240.1492
Email: yocelaw@aol.com
ATTORNEY FOR APPELLANT NUEVA
GENERACION MUSIC GROUP, INC.

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 52.10(a), I certify that I have notified or made a diligent effort to notify all parties by expedited means (such as by telephone or fax) that this Brief on Accelerated Interlocutory Appeal has been or will be filed.

By: _/s/ Yocel Alonso_____
Yocel Alonso

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all parties which are listed below on February 26, 2015 as follows:

*Via EFSP-EFM (Prodocs) System*
Xavier V. Chavez, Esq.
4200 Research Forest Dr., Ste. 330
The Woodlands, Texas 77381
**ATTORNEY FOR APPELLEE**

By: _/s/ Yocel Alonso_____
Yocel Alonso